Kuhle, Respondent, vs. Ladwig and another, Appellants.

*November 6, 1940—March 11, 1941.*

*D. J. Regan* of Milwaukee, for the appellants.

For the respondent there were briefs by *David J. Berk* and *Churchill, Churchill, Davis & Rapkin,* all of Milwaukee, and oral argument by *W. H. Churchill.*

The following opinion was filed December 3, 1940:

MARTIN, J.   The action, upon which this appeal is based, involves an unusual casualty which resulted in the death of Edward Kuhle, plaintiff's husband, on June 3, 1935.   The material facts are not in dispute.   Defendant Ladwig, a resident of Princeton, Wisconsin, about thirty-seven years of age, was engaged in making and selling alcohol.   Defendant Kuhle was an automobile mechanic, twenty-two years of age, and lived with his wife in the city of Fond du Lac.   Officers Quinn and Hawkes, hereinafter referred to, were federal agents, members of the federal alcohol tax unit.   It appears that Quinn had planned to trap Kuhle and Ladwig and arrest them while possessed with illegal (nontaxed) alcohol.   On the night of June 3, 1935, the four men met in Princeton at a place designated as the powerhouse.   Officer Quinn posed as the person desiring to purchase said alcohol, and Hawkes posed as Quinn's driver.   Ladwig was the maker and the seller of the liquor, and Kuhle was his driver and contact

man.   The alcohol was transferred from Ladwig's car to Quinn's car.   At the time of the accident, Ladwig was seated in the driver's seat of his 1935 Pontiac sedan, and Quinn was standing on the right side of the car with one foot on the running board facing Ladwig through the open door.   He had just disclosed his identity to Ladwig, showed his badge of authority as an officer, told Ladwig that he was under arrest, and covered him with his automatic revolver to prevent his escape.   At this time, Hawkes and Kuhle were on the left side of the car.   Quinn directed Hawkes to put Kuhle under arrest and bring him around to the right door of the car, which Hawkes did.   They came around the rear end of the car, Kuhle in the lead and Hawkes a few steps behind him.   Quinn ordered Kuhle into the rear seat of the car, intending Hawkes was to get in the rear seat also.   The automobile was a two-door sedan, the right door of which was exceptionally wide, and was hinged at the rear and opened from the front toward the rear of the body.   The motor was not running and the right door was standing open at right angles to the body of the car with Officer Quinn standing there with his pistol.   The dome light of the car was lighted and Ladwig saw the pistol pointed at himself.   The car was equipped with a starter and accelerator as a single unit so it would start by merely turning on the switch and stepping on the accelerator without stepping on any starter pedal.   Quinn turned partly aside to allow Kuhle to enter the car, his pistol plainly visible to both Kuhle and Ladwig.   As Kuhle was in the act of entering the car, Ladwig suddenly started the motor and the car went ahead with a rush, the open door striking Quinn's right arm, causing the gun to be discharged, the bullet hitting Kuhle who slumped over into the car.   Ladwig shortly thereafter pulled him into the car as he fled.   Ladwig admits that he heard and saw what was transpiring and was waiting and watching, as he sat in his car, intending to try to escape.

The foregoing facts are the substance of the trial court's findings. The court further found that Ladwig's act in setting his car in motion under the circumstances was a wrongful act, and in so doing he was guilty of gross negligence; that said act was the sole proximate cause of Kuhle's death; that a person of ordinary care and prudence ought reasonably to have foreseen that some injury might naturally, and in the ordinary course of events, result to someone from such a wrongful act. The court further found that plaintiff had individually sustained pecuniary damages in the sum of $7,500, and for the loss of society and companionship in the sum of $2,500 by reason of the wrongful death of her husband; and that Ladwig was insured by the Milwaukee Automobile Insurance Company against loss and expense resulting or arising from claims upon him by other persons by reason of the ownership, maintenance, manipulation, or use of said car in an amount not to exceed $5,000 at the time of the accident.

The plaintiff contends that Ladwig, in attempting to escape arrest, started the car too fast, causing the open door to strike Quinn's arm, causing the gun to discharge, resulting in her husband's death.

Appellants (defendants) assign as error, (1) that the court erred in refusing to dismiss the complaint on its merits on the legal maxim, *In pari delicto potior est conditio defendentis et possidentis;* (2) that the court erred in finding plaintiff's decedent free from negligence; (3) that the court erred in finding defendant guilty of gross negligence; (4) that the court erred in refusing to receive certain evidence offered by defendants; (5) that the court erred in failing to find that the plaintiff's decedent assumed the risk of any injury because of defendant's negligence; (6) that the court erred in refusing to find that Kuhle and Ladwig were engaged in a joint enterprise and that Ladwig's negligence was imputed

to Kuhle; and (7) the court erred in its assessment of damages.

The foregoing errors, excepting the fourth and the seventh, will be considered collectively. Appellants admit that Kuhle's death was caused by the wrongful act of their codefendant Ladwig, but they argue that deceased, at the time of his fatal injury, was engaged in an immoral, illegal, and criminal enterprise, and that an illegal or immoral transaction cannot be made the basis of an action by one who is a party to it. They further argue that deceased assumed the risk of injury while attempting to flee from arrest. Whatever may have been the relationship between defendant Ladwig and the deceased Kuhle prior to their being placed under arrest, such relationship terminated when they were taken into custody by the officers, and thereafter Kuhle was not engaged in the commission of a crime when Ladwig's wrongful act caused his death, unless it can be said that at that time he was attempting to escape from the custody of the officers and was engaged in the commission of a crime. There is no evidence that Kuhle made any attempt to break away from the custody of the officers. On the contrary, at the time he received the fatal shot, he was about to enter Ladwig's car in response to Officer Quinn's direction. It was at that moment that Ladwig, as the court found, "intentionally and deliberately and for the purpose of unlawfully escaping from said legal custody in which he was then being held, suddenly and violently and without any warning, started said automobile forward at a high, dangerous and unlawful rate of speed without the knowledge or participation in any way therein of said Edward Kuhle." This finding negatives any inference that the deceased made any attempt to flee from arrest or escape from the custody of the officers. He, therefore, was not at that time engaged in any immoral, illegal, or criminal enterprise, nor can it be said that he assumed the risk of injury while

attempting to flee from arrest because he made no such attempt.

It would be pure speculation and guess to say that Kuhle should have anticipated, under the circumstances, that Ladwig might suddenly start his car in an attempt to break away from the custody of the officers at a time when one of the officers had Ladwig covered with his gun. It necessarily follows that deceased Kuhle did not assume the risk of injury because of Ladwig's sudden movement of the car in his attempt to escape. For the foregoing reasons, it must also be held that deceased Kuhle and Ladwig were not engaged in any joint enterprise of any kind or character when the fatal accident occurred. In no respect can it be said that the findings of the trial court are against the great weight and clear preponderance of the evidence.

Appellants' fourth assignment of error is that the court refused to receive certain evidence offered by them. This alleged error is not discussed in their brief, nor is there any reference to any evidence offered by them which the court refused to receive.

Appellants contend that the damages awarded plaintiff are excessive. In this connection it appears that deceased was twenty-two years old, had a life expectancy of 40.85 years at the time of his death. He had completed the ninth grade of the public schools and had attended vocational school for three years where he learned automobile mechanics. He was in good health and was industrious and thrifty. He was an only child with prospects of inheritance from his parents. While it appears that for a period of six months, immediately preceding his death, he was engaged in doing carpenter and other work in connection with remodeling a building, being employed by his brother-in-law at $12 a week, there is no reason to assume, in view of his regular trade as an automobile mechanic, that $12 a week was the limit of his earning capacity. The plaintiff wife was twenty-seven years old at

the time of her husband's death. Their marital relations had been happy. He had provided $2,000 life insurance. The funeral and medical expenses amounted to $357, thus the award for pecuniary loss was $7,143. We cannot say that this amount is excessive. The court awarded the wife $2,500 for the loss of the society and companionship of her husband. This is the statutory limit, sec. 331.04 (2), Stats., but we think it fair and just. The judgment must be affirmed.

*By the Court.*—Judgment affirmed.

A motion for a rehearing was denied, with $25 costs, on March 11, 1941.