BERK, Respondent, vs. MILWAUKEE AUTOMOBILE INSURANCE COMPANY, Appellant.*

*September 14—October 10, 1944.*

* Motion for rehearing denied, with $25 costs, on December 19, 1944.

598

For the appellant there were briefs by *Dennis J. Regan* and *Bender, Trump & McIntyre,* attorneys, and *Eugene L. McIntyre* of counsel, all of Milwaukee, and oral argument by *Mr. McIntyre.*

For the respondent there were briefs by *Churchill, Davis & Churchill* of Milwaukee, and oral argument by *W. H. Churchill.*

A brief was also filed by *Wilkie, Toebaas, Hart & Jackman* of Madison, attorneys for the Wisconsin Mutual Insurance Alliance, as *amici curiæ.*

MARTIN, J.   The facts in the case of *Kuhle v. Ladwig,* so far as here material, are adequately stated in 237 Wis. 147,

148, 149, 295 N. W. 41, and will not be here repeated. The trial court's findings, the substance of which is set out in the preceding statement, are to the effect that a person of ordinary care and prudence, in the exercise of that degree of care and diligence which such a person would have exercised in the management of his own business were he investigating and adjusting a claim such as the Kuhle claim, would have accepted the offer of settlement which was made during the pendency of the case; that in refusing to accept the offer of settlement, which was made on behalf of Marie Kuhle before the case was begun, the defendant failed to exercise that degree of care and diligence which a person of ordinary care and prudence would have exercised in the management of his own business were he investigating and adjusting such claim; that the defendant's decision to refuse the offer of settlement which was made before the case was begun was the result of defendant's failure to weigh the probabilities in a fair and honest way; that the defendant's decision to reject the offer of settlement which was made before the case was begun was made in bad faith; that the defendant's decision to litigate the case rather than settle it and to reject the offer of settlement which was made during the pendency of said case was made in bad faith. The court's conclusions of law are grounded on bad faith.

Plaintiff can prevail only on the basis that defendant acted in, or was guilty of, bad faith in rejecting the offer of settlement, and in defending that action rather than settling same. Bad faith is a species of fraud, and the evidence to sustain a finding thereof must be clear, satisfactory, and convincing. *Massey v. Richmond*, 208 Wis. 239, 246, 242 N. W. 507. The test is not whether the defendant acted negligently, but whether it acted in bad faith toward the plaintiff. In some jurisdictions the courts have permitted recovery where the insurer was guilty of negligence in not making a settlement. See annotation, 131 A. L. R. 1501, 1502.

In *Wisconsin Zinc Co. v. Fidelity & D. Co.* 162 Wis. 39, 155 N. W. 1081, the complaint alleged three separate causes of action: The first one on contract; the second one in tort based on negligence; and the third one on fraud and bad faith. The defendant demurred separately to each of the causes of action on the ground that they failed to state facts sufficient to constitute a cause of action. The trial court overruled all of the demurrers. On appeal, this court sustained the trial court as to the first and second causes of action, but reversed as to the third. At page 50 the court said:

"They further hold that the parties may agree, and that under such contracts they do agree, that the insurer shall have the exclusive right to settle claims and that this right may be exercised to its full extent by the insurer for its own benefit and advantage, *subject to the qualification that it acts in good faith.*" To same effect, see *Hilker v. Western Automobile Ins. Co.* 204 Wis. 1, 8, 231 N. W. 257, 235 N. W. 413; *Lanferman v. Maryland Casualty Co.* 222 Wis. 406, 408, 267 N. W. 300.

In *Hilker v. Western Automobile Ins. Co., supra,* on rehearing, page 14, the court said:

"It is the right of the insurer to exercise its own judgment upon the question of whether the claim should be settled or contested. But because it has taken over this duty, and because the contract prohibits the insured from settling, or negotiating for a settlement, or interfering in any manner except upon the request of the insurer, such as assisting in the securing of witnesses, etc., its exercise of this right should be accompanied by considerations of good faith. Its decision not to settle should be an honest decision. It should be the result of the weighing of probabilities in a fair and honest way. If upon such consideration it decides that its interest will be better promoted by contesting than by settling the claim, the insured must abide by whatever consequences flow from that decision. He has so agreed. But as already stated, such decision should be an honest and intelligent one. It must be honest and intelligent if it be a good-faith conclusion. In

order that it be honest and intelligent it must be based upon a knowledge of the facts and circumstances upon which liability is predicated, and upon a knowledge of the nature and extent of the injuries so far as they reasonably can be ascertained."

In the *Hilker* and *Lanferman Cases, supra,* the court held that the evidence sustained jury findings of bad faith. Referring to the investigation made by the insurer in the *Hilker Case, supra,* pages 17, 18, the court said:

"We can see no room to quibble upon the proposition that the insurer made an inadequate, a careless if not shiftless, investigation of the facts with reference to the accident and injury, that it never at any time was in position to exercise a sound or good-faith judgment, and that in none of these respects did it meet the duty which it owed to the plaintiff. As a result of its dereliction in these respects, it never in good faith determined for itself whether the claim should be compromised or settled, nor did it place the insured in possession of facts suggesting liability on his part which would enable him to take any steps to protect himself."

In the *Lanferman Case, supra,* the insurer recognized that there was liability. During the course of the trial the plaintiff offered to accept $5,000 and costs in settlement, which was the amount of coverage. The insurer offered $5,000 in settlement but refused to pay the costs. The court said, page 409:

"Upon the testimony as to all these matters, which the jury might rightly believe, we consider that the finding of bad faith on the part of the defendant [insurer] was warranted."

In the annotation, 131 A. L. R. 1501, the rule is stated thus:

"As stated in the annotation in 71 A. L. R. 1489, a majority of the courts passing upon the question hold that the insurer cannot be held liable in tort for mere negligence on its part in failing or refusing to settle or compromise a claim brought against the insured for an amount within the policy limit, but that to be held liable in tort for its failure or refusal

in this respect so as to entitle the insured to recover for the excess of the judgment over the policy limit it must have been guilty of fraud or bad faith." See cases there cited.

In the instant case no contention is made that the defendant did not make an adequate investigation of the facts. Since the trial of that case no additional facts have been found by either party. The facts relative to negotiations of settlement prior to the commencement of the *Kuhle Case* are in substance as follows:

Kuhle was fatally injured June 3, 1935. Marie Kuhle, his widow, first engaged an attorney named Zuleger, who, on a couple of occasions prior to June 25th, telephoned Richard McCue, attorney and adjuster for the defendant. At that time McCue had no report of the accident. Later, Mrs. Kuhle retained David J. Berk, the plaintiff, as her attorney. On June 20th, Mr. Ladwig reported the accident as follows to the Merrill agency, 803 West Michigan street, Milwaukee, Wisconsin, which agency had issued his policy:

"I wish to report that on the 3d day of June, 1935, I had an accident, in which a Mr. Kuhle was killed, at Princeton, Wisconsin. If you wish additional information, kindly communicate with me at my home, at Princeton, Wisconsin."

Berk first communicated with the defendant on June 25, 1935. McCue informed Berk he had not completed his investigation and asked Berk to wait until he had. Sometime during the fall of 1935 Berk had more talks with McCue during which he insisted on a substantial sum in settlement, finally said he would accept $1,500. McCue insisted that there was no liability on Ladwig or his insurer, and that he would not offer over $250 in settlement. There were no further negotiations until after the Kuhle action was commenced in May, 1937. Thereafter, Berk again conferred with Attorneys McCue and Regan, who at that time represented Ladwig and his insurance carrier. Berk testified that

he told Regan and McCue that Mrs. Kuhle desired to settle the case to avoid publicity.

On or about July 27, 1937, in a telephone conversation between Berk and McCue, McCue said he was not satisfied as to whether the arrest of Ladwig and Kuhle had terminated their illegal conduct. On same date Berk claims that he wrote the defendant and received no response.

Sometime in April, 1939, Berk had a conversation with Attorney Dennis Regan, who at that time had personal charge of the defense of the instant action. He testified that he told Regan his client would take $750 in settlement. During his conversation Regan stated that he was not satisfied as to liability, and asked Berk if he had any authorities on the point. Berk replied he had none. Regan told Berk he was satisfied there was no liability.

Defendant's adjusters and attorneys have vigorously contended from the start to the present time that there was no liability in the *Kuhle Case*. Ladwig never requested or even suggested that defendant make a settlement in the *Kuhle Case*. On the contrary, he clearly indicated that no settlement be made.

The case of *Wakefield v. Globe Indemnity Co.* 246 Mich. 645, 225 N. W. 643, is in point both as to the law and the facts. In that case the plaintiff city operated an automobile-bus line. Defendants carried its liability insurance under a joint policy, in the sum of $10,000 for damages to any one person. Frank Borski was injured by one of the city vehicles, brought suit for damages, and defendants assumed the defense with the city attorney co-operating and attorney of record. On the trial Borski recovered judgment of over $15,000, which was affirmed by the Michigan supreme court (*Borski v. Wakefield,* 239 Mich. 656, 215 N. W. 19). The city having paid the judgment, defendants reimbursed it in the sum of $10,000 and costs. The city brought action in tort to recover the balance of the judgment, on the claims of,

(a) negligent defense of the Borski suit by defendants; (b) their failure to exercise reasonable care to effect a compromise of Borski's claim; and (c) their bad faith in refusing settlement. Before the trial, several propositions of settlement were suggested to defendants. During the trial counsel for Borski, for the city, and for defendants reached an agreement to compromise the suit for $4,325, subject to defendant's approval. Defendant's attorney concluded his case was hopeless and wired his superior authority as follows (p. 654):

"This is a dangerous case. Stop. One hundred per cent disability and may be permanent. Stop. Medical testimony strong. Stop. Do not submit counter offer as we may finish case today. Stop. I advise settlement."

The defendant declined to approve the settlement. The policy required defendants to defend all suits brought against the insured to recover damages under it "unless the insurers shall elect to effect settlement thereof," and contained the clause (p. 647):

"The insurers shall have the exclusive right to contest or settle any of said suits or claims. The assured shall not interfere in any way respecting any negotiations for the settlement of any claim or suit, nor in the conduct of any legal proceedings, but shall, at all times, at the request of the insurers, render to them all possible co-operation and assistance. The assured shall not voluntarily admit or assume any liability for an accident, nor incur any expense other than for immediate surgical relief, nor settle any claim, except at the assured's own cost."

Three of the justices were for a reversal and a new trial, holding there was evidence for the jury as to bad faith, but their opinion rested on the proposition that "where there is any evidence whatever of bad faith, the issue is for the jury." The sentence, "Where there is any evidence whatever of bad faith, the issue is for the jury," is contrary to our rule that

fraud or bad faith must be established by evidence that is clear, satisfactory, and convincing. The opinion by Justice SHARPE, concurred in by four of the other justices, and also by Justice FEAD, who wrote the opinion for reversal and a new trial, agreed that "it is not bad faith if counsel for the insurer refuse settlement under the *bona fide* belief that they might defeat the action, or, in any event, can probably keep the verdict within the policy limit. . . . A mistake of judgment is not bad faith."

Justice SHARPE quoted approvingly from *Wisconsin Zinc Co. v. Fidelity & D. Co., supra.* The opinion of the majority of the justices held that the evidence did not require the submission to the jury of the question whether Mr. Campbell acted in bad faith in declining to accept the offer of settlement. The judgment was reversed and set aside with costs to appellants, and cause remanded to the trial court, with directions to enter judgment for the defendants. To same effect, see *Norwood v. Travelers Ins. Co.* 204 Minn. 595, 284 N. W. 785, 786.

In *Mendota El. Co. v. New York Indemnity Co.* 175 Minn. 181, 221 N. W. 61, the policy limit was $5,000. Settlement was made for $18,000, of which $11,250 was paid by Tri-State Telephone & Telegraph Company, $2,000 by Northern States Power Company, $3,625 by defendant as plaintiff's insurer, and $1,124 (the subject matter of the action) by plaintiff. The only reason why defendant refused to pay more was because its attorney insisted that the Northern States Power Company ought to pay as much as defendant, and that company refused to pay over $2,000. Judgment rendered on the verdict for plaintiff was reversed with directions to dismiss, the supreme court holding that there was no evidence of bad faith, although stating that the opinion of counsel as to the Northern States Power Company's obligation was probably open to question. At page 184 the court said:

"But it takes something more than error of judgment to create liability. There must be bad faith with resulting injury to the insured before there can be a cause of action." To same effect, see *Lawson & Nelson Co. v. Associated Ind. Corp.* 204 Minn. 50, 282 N. W. 481; *Georgia Casualty Co. v. Mann,* 242 Ky. 447, 46 S. W. (2d) 777.

On the undisputed facts can it be held that defendant's adjusters and attorneys acted in bad faith in not settling the *Kuhle Case,* where, upon their full investigation of the facts and law they concluded that it was a case of no liability? The contention of respondent that defendant did not rely on the advice of its counsel is contrary to the undisputed evidence. The defendant's general claims manager, investigators, and attorneys were men of recognized ability and wide experience in their fields. They had handled thousands of claims and hundreds of lawsuits for defendant company. Never, before the case at bar arose, had a claim been made against defendant for excess beyond a policy limit, and never before had a single charge of bad faith or lack of good faith been made against defendant. It was reasonable and natural that defendant should rely in the *Kuhle Case* on the judgment and advice of its attorney. No offer of compromise was made after the trial of the *Kuhle Case* in the circuit court. There is no evidence that any settlement could have been made, after the trial in the circuit court and prior to the commencement of the present action, for less than the full amount of the judgment. There is some evidence that the *Kuhle Case* could have been settled for either $750 or $1,500 before the trial in the circuit court. The fact that defendant declined such offers and contested the action, when it could have settled at either figure, appears to be persuasive evidence of the good faith of defendant. We know of many instances in which able counsel have appeared before the court and, upon an agreed state of facts, differed as to the law of the case. Courts, as well

as attorneys, sometimes differ on the law applicable to a given state of facts.

We fail to find any evidence to sustain a finding that the defendant was in any respect guilty of bad faith in its handling of the *Kuhle Case* from its inception to its conclusion. It follows that plaintiff cannot recover in the instant action.

Respondent contends that appellant proposed certain findings and conclusions of law which sustain the judgment, and that it cannot, therefore, attack the judgment on its appeal. Appellant did propose certain findings and conclusions which were in accord with the trial court's decision, but in so doing it is important to note the following:

"The defendant proposes the foregoing findings of fact and conclusions of law without in any way admitting that the evidence in the case supports such findings. The defendant specifically objects to the fifth, sixth, seventh, eighth, ninth, tenth, eleventh, and twelfth proposed findings of fact submitted by the plaintiff, and also specifically objects to the first and second proposed conclusions of law submitted by the plaintiff."

There is no merit in this contention and a citation of authorities seems unnecessary.

*By the Court.*—Judgment reversed. Cause remanded with directions to vacate and set aside the findings, conclusions of law, and judgment; and to enter judgment dismissing the action with costs.