## ROYAL TRANSIT, Inc., v. CENTRAL SURETY & INS. CORPORATION.
### Civil Action No. 700.

District Court, E. D. Wisconsin.

March 3, 1948.

Judgment Affirmed June 1, 1948.

Leo J. Landry, Wallace R. Reiss, and H. K. Curtis, all of Milwaukee, Wis., for plaintiff.

M. A. Jacobson of Waukesha, Wis., for defendant.

DUFFY, District Judge.

Plaintiff is a common carrier engaged in the transportation of property by motor vehicle. Defendant is an insurance company writing automobile public liability insurance. In August, 1936, defendant issued such a policy of insurance to plaintiff with a policy limit of $45,000 for the death or bodily injury to a single individual. Such risks were re-insured by another insurance company in all amounts in excess of $5,000.

In July, 1937, while said policy of insurance was in full force and effect, one of plaintiff's trucks was loaded in Illinois with a cargo of bar steel and six large steel plates. Each plate was 12 ft. long, 10 ft. wide, and 5/16" thick, and weighed 1750 lbs. Three plates were placed upright on each side of the truck and were set in heavy steel hooks or stirrups which were suspended below the level of the truck platform. The plates were kept upright and stable by the use of two long chains and two shorter chains and an old bedspring. The chains were tightened and kept tight by the use of a binder clamp. A detailed description of the manner in which the chains were fastened appears in Zamecnik v. Royal Transit, Inc., 239 Wis. 175, 179, 180, 300 N.W. 227.

One Schultz, a truck driver employed by the plaintiff, drove the truck to the plant of the Allis-Chalmers Manufacturing Company, where the steel plates were to be unloaded. Because of the size and weight, it was necessary in order to unload them to attach the hook of an overhead crane to each set of plates. One Shrake, an employee of Allis-Chalmers, was directed to assist in hooking the crane onto the plates. To do so he had to first fasten a heavy C-clamp to the top of each set of plates. He attempted to do so while standing on the truck platform, but was unable to install the clamp from that position. He then left the truck and obtained a ladder which he placed leaning against the outside of the plates on the left-hand side of the truck. In the meantime Schultz, the truck driver, had removed the bedspring and had started to get the plates ready for unloading by pulling the lever of the binder clamp, thus loosening the chains. When Schultz loosened and disconnected the binder clamp, he removed the only fasteners which were holding the heavy plates in position.

Suddenly the plates on the left side fell outward, killing Shrake. At that moment Zamecnik, an Allis-Chalmers employee, was walking by the truck in an aisle designated by red lines as a place to be kept clear for walking purposes. The falling plates struck Zamecnik, causing grave injuries. He sustained a badly compressed fracture of the tenth dorsal vertebra and the posterior dislocation of the tenth, eleventh and twelfth dorsal vertebrae. His spinal cord was completely severed causing complete motory and sensory paralysis below the point of the break. As a consequence he lost control of his bowels and active urination. In order to urinate thereafter it was necessary to catheterize him four times each day and once at night and

his bowels were cared for by giving him castor oil each second day. His condition is permanent. He could not be treated adequately at home and required hospitalization throughout the remainder of his life. Nursing care is required to keep him in a state of health. For several months he suffered excruciating and continuing pains. Up to the time of the trial in January, 1941, his wage loss and the cash expenditures for hospital, doctor and nurses charges were approximately $21,000. There was proof that his wage loss and the necessary expenditures in the years to come to treat his injuries would be in excess of $5,600 annually. At the time he was injured he was forty-six years of age. He had an expectancy, according to the American Experience Table of Mortality, of 23.81 years and the testimony on the trial showed that he can, with good nursing, be expected to live as long as the average man.

An action was commenced by Zamecnik in the Circuit Court of Milwaukee County, in which he demanded $100,000 damages. Shortly thereafter the attorneys for the defendant wrote a letter to Royal in which they stated, "There is the likelihood that a judgment may be entered in this action for an amount in excess of the limit of your policy of insurance, in which event your company would become personally involved in respect to the payment of the same in respect to policy limit." The attorneys for the defendant made a detailed investigation of the condition of Zamecnik and as to the manner in which the injuries were sustained. Defendant's attorneys were well aware of the extent of Zamecnik's injuries, and of the fact that he would never be able to work again and would be confined in a hospital for the rest of his life.

Prior to the date of trial Attorney Wengert, representing Royal, held frequent conferences with the attorneys for the defendants in that case. He repeatedly urged that the case was one of absolute liability and insisted there should be a settlement within the policy limits. Upon behalf of Royal he offered to contribute $3,500 in order that a settlement might be effected. As a reward for his efforts his client was several times threatened by defendant's attorneys with the penalties following noncooperation. As an illustration, on December 3, 1940, defendant's attorneys wrote that Royal was stressing settlement and that such attitude "does not constitute an attitude of cooperation and compliance with the terms of the policy."

The attorneys for the various parties involved had frequent conferences prior to the trial in the Circuit Court. Some of these were at conciliation hearings before Judge Sullivan. Zamecnik's attorneys at first offered to settle for $45,000, the limit of the policy. Thereafter offers of settlement for $40,000 were made by Attorney Quarles and Attorney McCann. In order to dispose of any liability on its part, Royal raised its offer to contribute to the sum of $5,000, so before the end of the trial a settlement could have been effected by defendant for $35,000.

Attorney Quarles, who has had wide experience in negligence cases, testified that he considered the case one of liability and anticipated that the judgment might run from $80,000 to $100,000. Attorney McCann, who likewise has had extensive practice in personal injury cases, considered that the case was one of liability, and that the judgment might range from $75,000 to $100,000. Attorney Paulsen, who represented the re-insurer, urged settlement as he considered it to be a case of liability. Mr. Dougherty, one of defendant's attorneys, testified he had in mind a settlement from $30,000.00 to $35,000. Mr. Arnold, the other attorney for defendant, agreed with Mr. Paulsen when, during the trial, the latter urged a settlement of about $35,000. No counter offers were ever made to Zamecnik's attorneys. The fault lies at the door of one Miller, an official of the defendant company, who controlled the question of settlement and who was personally present during the trial. Although his company only had a $5,000 stake in the litigation, he stubbornly refused to consider the offers of settlement or to authorize any counter proposal. Apparently he liked the idea of gambling with the money of other people. He testified he was engaged in a game of horse trading.

At the Circuit Court trial, the defendant urged various defenses, including contributory negligence, but such were brushed aside. The verdict was rendered not by the jury but by Circuit Judge Gehrz, a jurist of wide experience. This resulted, under Wisconsin practice, when both parties moved for a directed verdict. The judge resolved all questions in favor of Zamecnik and awarded damages of $62,-500. On appeal the Supreme Court of Wisconsin said in approving the amount of damages (page 187 of 239 Wis., page 232 of 300 N.W.): "* * * plaintiff's damages will obviously exceed, without taking into consideration any allowance for pain and suffering and humiliation, etc., the award of $62,500, if it is assumed that he could be expected to live but eight years after the trial, instead of the period of his expectancy according to the American Experience Table of Mortality."

On January 13, 1941, the date of the commencement of the trial in Circuit Court, plaintiff caused a notice to be served on the attorneys for the defendant as follows: "Please be advised * * * that Royal Transit, Inc. * * * will look to the Central Surety and Insurance Company for indemnification in the event the final judgment in the above entitled action exceeds the liability provided in the policy of insurance. Please be further advised that demand is herewith made that settlement within the limits of the policy be made with the plaintiff in this action in accordance with the offer of settlement submitted by the plaintiff."

Plaintiff brings this action, alleging bad faith on the part of the defendant in failing to settle Zamecnik's claim within the policy limits and because of its failure to make any counter offer to the settlement proposals made by attorneys for Zamecnik.

This case must be decided pursuant to Wisconsin law which brings before us for consideration the cases of Hilker v. Western Automobile Insurance Co., 204 Wis. 1, 231 N.W. 257, 235 N.W. 413; Lanferman v. Maryland Casualty Co., 222 Wis. 406, 267 N.W. 300; Berk v. Milwaukee Automobile Insurance Co., 245 Wis. 597, 15 N.W.2d 834.

In the Hilker case the policy limit was $5,000. A judgment of $10,500 was recovered. The actions could have been settled within the policy limit, probably for $3,000. The Supreme Court said (page 8 of 204 Wis., page 260 of 231 N.W.): "The interests of the insurance company being to so large an extent adverse to those of the plaintiff, its conduct while acting as agent of the plaintiff with reference to these claims must be subjected to close scrutiny in order to determine whether it acted in bad faith toward the plaintiff." And (page 9 of 204 Wis., page 260 of 231 N.W.): "With this evidence in the case, the jury were warranted in finding that a good-faith effort to protect the interests of the plaintiff required the company to do something more than to suggest an adjustment by the payment of such sums as $500, or even $1,500." And (page 10 of 204 Wis., page 260 of 231 N.W.): "* * * Under such circumstances the failure to make some more effective effort to adjust the cases does present evidence which sustains the finding that the defendant acted in bad faith toward the plaintiff in handling these claims and conducting this litigation." And (page 13 of 204 Wis., page 414 of 235 N.W.): "* * * Negligence has been used by some courts to mean the same thing that other courts have designated as bad faith. Bad faith, especially, is a term of variable significance and rather broad application. Generally speaking, good faith means being faithful to one's duty or obligation; bad faith means being recreant thereto. * * *" The insured in the Hilker case, as in the case at bar, was warned to keep his hands off. However, in the Hilker case the insurance company made an inadequate investigation which is not true in the case at bar.

In the Lanferman case, supra, the policy limit was $5,000 and costs; a judgment in excess of $15,000 was recovered. The case could have been settled for the policy limit. The insured's attorney had informed the insurance company's counsel that he believed a verdict in excess of the policy limit would be returned and had demanded that the insurance company settle within those limits. No offer of settlement was

made prior to trial. The insurance company insisted that insured make a contribution toward the amount to be offered but which the insured was unable to do. The insurance company's attorney claimed that he would be able to obtain a finding of contributory negligence. The Supreme Court said page 409 of 222 Wis., page 301 of 267 N.W.: " * * * Upon the testimony as to all these matters, which the jury might rightly believe, we consider that the finding of bad faith on the part of the defendant was warranted."

In the Berk case, supra, the Hilker and Lanferman cases were discussed, and the court asked the question (page 608 of 245 Wis., page 839 of 15 N.W.2d): "On the undisputed facts can it be held that defendant's adjusters and attorneys acted in bad faith in not settling the Kuhle case [Kuhle v. Ladwig, 237 Wis. 147, 295 N.W. 41], where, upon their full investigation of the facts and law they concluded that it was a case of no liability? * * *" In the Berk case the insured, Ladwig, never requested or suggested that the defendant insurance company make a settlement. In fact he clearly indicated no settlement should be made. The court said (page 601 of 245 Wis., page 836 of 15 N.W.2d): " * * * Bad faith is a species of fraud, and the evidence to sustain a finding thereof must be clear, satisfactory, and convincing. * * * The test is not whether the defendant acted negligently, but whether it acted in bad faith toward the plaintiff. * * *"

There is no suggestion in the opinion in the Berk case that the court intended to modify or change the rule laid down in the Hilker and Lanferman cases. Furthermore, the case at bar can be distinguished from the Berk case. There those concerned in the defense thought that it was a no liability case; here no such thought was in the mind of any of the attorneys. There the insured was of the opinion no settlement should be made; here the insured repeatedly demanded a settlement be made within the policy limits and offered to make a substantial contribution in order to effect same. In the case at bar we have a stubborn, unyielding Mr. Miller, deaf to entreaties and advice alike, who

in his own words "was engaged in a game of horse trading."

I conclude that the conduct of defendant insurance company was more than negligence. I believe that the evidence in this case is clear, satisfactory and convincing that the conduct of defendant amounted to bad faith.

Judgment may go for the plaintiff.