## ROYAL TRANSIT, Inc. v. CENTRAL SURETY & INS. CORPORATION.

### No. 9408.

Circuit Court of Appeals, Seventh Circuit.

June 1, 1948.

Suel O. Arnold, Glenn R. Dougherty, Marcus A. Jacobson, and Dougherty, Arnold & Waters, all of Milwaukee, Wis., for appellant.

Eugene Wengert and Leo J. Landry, both of Milwaukee, Wis., for appellee.

Before MAJOR and KERNER, Circuit Judges, and LINDLEY, District Judge

MAJOR, Circuit Judge.

This is an appeal from a judgment in favor of the plaintiff in the sum of $24,011.37, in a suit to recover from the defendant, predicated on its alleged bad faith in failing and refusing to settle an action brought against plaintiff by one Zamecnik to recover damages for personal injuries. Zamecnik, an employee of Allis-Chalmers, was injured by the alleged negligence of an employee of Royal Transit, which was engaged in delivering a truck load of steel plates to Allis-Chalmers. The injuries were suffered as a result of the steel plates falling from the truck upon Zamecnik.

The Zamecnik action commenced in the Circuit Court of Milwaukee County demanded damages in the amount of $100,000. Allis-Chalmers having been required to pay workman's compensation was made a party defendant and cross-complained against the defendant, Central Surety and Insurance Corporation.

In August, 1936, defendant issued to plaintiff its policy of automobile liability insurance, with a limit of $45,000 for the death or bodily injury to a single individual. Such risks were reinsured by the defendant in another insurance company in

all amounts in excess of $5,000. The Zamecnik action could have been settled before the trial, but was not, for an amount less than the defendant's maximum liability, and a judgment was secured by Zamecnik against the plaintiff in the amount of $62,500. This judgment on appeal was affirmed by the Supreme Court of Wisconsin, Zamecnik v. Royal Transit, Inc., 239 Wis. 175, 300 N.W. 227.

The case below was tried by the court without a jury, which made detailed findings of fact. Among other things it found:

"That said defendant at all times refused to agree or accede to any such offer of settlement and stubbornly, persistently, unreasonably, unintelligently and in bad faith refused to accept any such offer or any offer by which it could have settled said Zamecnik action within the coverage of said policy and stubbornly, persistently, unintelligently and in bad faith refused to make any counter offer of compromise within the coverage of said policy; and defendant threatened plaintiff for its efforts in seeking a settlement of said cause of action with penalties following non-cooperation provided for in the policy; that defendant could not and did not have a good faith belief that it could successfully defend said action.

"That the conduct of defendant before, during and after the trial of the Zamecnik case as set forth in these findings shows a manner of conduct which was an abuse of its power and betrayal of its duty to the plaintiff, and its decision to litigate the case rather than settle it for less than the policy coverage and its refusal to make a counter offer in an attempt to settle, and its threats to plaintiff when plaintiff urged settlement, was neither intelligent nor honest and such conduct clearly, satisfactorily and convincingly establishes bad faith."

While numerous contentions are advanced by the defendant, the primary issue for our determination is whether the findings of the trial court that the defendant exercised bad faith in refusing to make a settlement of the Zamecnik suit are substantially supported by the record.

Both sides agree that the applicable law is that announced by the Supreme Court of Wisconsin, and four cases are cited and discussed wherein the rights and liabilities of an insurer and insured under circumstances not dissimilar to those of the instant case have been determined. Wisconsin Zinc Co. v. Fidelity & Deposit Co. of Maryland, 162 Wis. 39, 155 N.W. 1081, Ann.Cas.1918C, 399; Hilker v. Western Automobile Ins. Co., 204 Wis. 1, 231 N.W. 257, 235 N.W. 413; Lanferman v. Maryland Casualty Co., 222 Wis. 406, 267 N.W. 300; and Berk v. Milwaukee Automobile Insurance Co., 245 Wis. 597, 15 N.W.2d 834. In the Zinc Company case the question of the insured's good faith was raised on the pleadings. In the other three cases the question before the Supreme Court, as it is here, was whether the findings by a trial court of bad faith on the part of the insurer was sustained by the proof. In the Hilker and Lanferman cases it was held that the proof was sufficient to sustain such a finding, while in the Berk case the evidence was held insufficient.

We think it unnecessary to follow the defendant in its detailed analysis and its effort to distinguish these cases for the reason that they all hold in effect that an insurer is charged with the responsibility of exercising good faith in the defense of a claim against its insured and to exercise good faith in settling or compromising such claim within the limits of its liability where liability is conceded or where there is no reasonable basis for a contrary conclusion. The rule of law thus announced by the Supreme Court is not difficult of ascertainment, but the real problem is its application to the facts of a given case.

In the Berk case, the latest of the Wisconsin Supreme Court cases, while the judgment was reversed because of the insufficiency of the proof to sustain a finding of bad faith, the court nevertheless recognized the duty imposed upon an insurer as announced in its previous decisions. For instance, on page 602 of 245 Wis., on page 836 of 15 N.W.2d, it quoted with approval from its former decision in the Hilker case, as follows:

" 'But because it has taken over this duty, and because the contract prohibits the insured from settling, or negotiating for

a settlement, or interfering in any manner except upon the request of the insurer, such as assisting in the securing of witnesses, etc., its exercise of this right should be accompanied by considerations of good faith. Its decision not to settle should be an honest decision. It should be the result of the weighing of probabilities in a fair and honest way. * * * It must be honest and intelligent if it be a good-faith conclusion.' "

■ Notwithstanding the strong reliance which defendant places upon the Berk case, we think it is so clearly distinguishable on the facts as to furnish little if any support for defendant's contention in the instant case. One circumstance alone may be mentioned. There, as pointed out by the court, the insured not only failed to request or suggest that the insurer make a settlement but "clearly indicated that no settlement be made." It is difficult to discern how the insurer in any case could be guilty of bad faith toward its insured for refusing to make a settlement when such refusal was agreed to or joined into by the insured.

With the law of Wisconsin thus shown, we now turn to the proof with the view of ascertaining if the findings relative to bad faith made by the lower court are substantially supported. We think only a brief statement of the circumstances surrounding the injuries sustained by Zamecnik is required. (A detailed statement may be found in Zamecnik v. Royal Transit, Inc., 239 Wis. 175, 300 N.W. 227.) In July, 1937, while said policy of insurance was in full force and effect, one of plaintiff's trucks was loaded in Illinois with a cargo of bar steel and six large steel plates. These plates were kept upright and stable on the truck by the use of two long chains and two short chains and an old bed spring. The chains were tightened and kept tight by the use of a binder clamp. One Schultz, a truck driver employed by the plaintiff, drove the truck to the plant of Allis-Chalmers Mfg. Company, where the steel plates were to be unloaded. Because of the size and weight, it was necessary in order to unload them to attach the hook of an overhead crane to each set of plates.

One Shrake, an employee of Allis-Chalmers, was directed to assist in hooking the crane onto the plates. To do so, he had to first fasten a heavy C-clamp to the top of each set of plates. He attempted to do so while standing on the truck platform but was unable to install the clamp from that position. He then left the truck and obtained a ladder which he placed in a leaning position against the outside of the plates on the left-hand side of the truck. In the meantime Schultz, the truck driver, had removed the bed spring and had started to get the plates ready for unloading by pulling the lever of the binder clamps, thus loosening the chain. The steel plates fell immediately when Schultz unloosened the chains, and Zamecnik received the injuries complained of.

The defendant, as bearing upon its conduct in refusing to settle the Zamecnik action, insists that there was no negligence on the part of Schultz, and that in any event Zamecnik was guilty of contributory negligence. Both of these contentions were disposed of by the Supreme Court of Wisconsin adversely to the defendant, in language so emphatic as to indicate that the court regarded them as without merit. Of course, the mere fact that the defendant was unsuccessful either in the trial or in the Supreme Court does not of itself show that a defense was not made in good faith. Many a legal battle has been lost notwithstanding a good-faith defense, and perhaps some have been won on a defense of little merit. A study of the testimony, however, including that upon which defendant relies, leaves little if any room for doubt that liability on the Zamecnik suit was a foregone conclusion. Any belief entertained by the defendant that it could successfully defend the cause of action there asserted must have sprung from an optimism unrelated to the realities of the situation. We are not called upon, however, to decide that the improbability that defendant had a reasonable and intelligent belief that it could successfully defend the Zamecnik action was in itself sufficient to show bad faith. That is merely one of the elements constituting the factual situation upon which the lower court predicated its finding of bad faith.

Shortly after the Zamecnik action had been instituted, attorneys for the defendant insurance company wrote a letter to plaintiff in which it was stated "that there is the likelihood that a judgment may be entered in this action for an amount much in excess of the limit of your policy of insurance," and further advised Royal Transit that it was at liberty to engage counsel to protect its interests. Thus, in the beginning the attorneys for the defendant recognized both the likelihood of liability to Zamecnik and that the character of his injuries was such that a judgment might be obtained in excess of $45,000, defendant's maximum liability.

On January 13, 1941, prior to the commencement of the Zamecnik trial, his counsel wrote to defendant's attorneys advising them that Royal Transit would "look to the Central Surety and Insurance Company for indemnification in the event the final judgment * * * exceeds the liability provided for in the policy of insurance," and demanded "that settlement within the limits of the policy be made with the plaintiff in this action in accordance with the offer of settlement submitted by the plaintiff." In reply to this letter, the attorneys for the defendant wrote to Royal Transit's counsel, stating among other things: "If your clients settle with the plaintiff, which our clients say they would not be justified in doing, our clients will avail themselves of the defenses that your clients are and were not justified in settling, and that the amount paid in settlement is unreasonable and shall not be considered liquidated damages."

No question is raised as to the extent of Zamecnik's injuries or that the judgment obtained by him was excessive, so that the character of his injuries may be only briefly described. As the lower court found, and which is not disputed: "The falling plates struck Zamecnik, causing grave injuries. He sustained a badly compressed fracture of the tenth dorsal vertebra and the posterior dislocation of the tenth, eleventh and twelfth dorsal vertebrae. His spinal cord was completely severed causing complete motory and sensory paralysis below the point of the break." The court further found, which is undisputed, that his condi-

tion was permanent and that he would require hospitalization throughout the remainder of his life. At the time of the trial in January, 1941, his wage loss and the cash expenditures for hospital, doctor and nurse's charges were approximately $21,000. There was proof that his wage loss and the necessary expenditures in the years to come to treat his injuries would be in excess of $5,600 annually. His expectancy according to the American Experience Table of Mortality was 23.81 years, and the testimony showed that with good nursing he might be expected to live as long as the average man.

The defendant was not surprised at any of the testimony offered at the Zamecnik trial, either as to the cause or extent of his injuries. All of such facts were in its possession long prior to the trial; in fact, defendant emphasizes the thorough investigation which it made and the complete information which it possessed relative to the Zamecnik claim. The situation is thus emphasized in support of defendant's reliance upon Hilker v. Western Automobile Ins. Co., supra, as a demonstration of its good faith. It is true the court in that case relied heavily upon the insured's failure to investigate properly and ascertain the facts. The absence of such facts, so the court reasoned, precluded the insured from exercising the honest and intelligent judgment which the law requires. While the lack of a proper investigation may be evidence of bad faith, it does not follow that a proper investigation and ascertainment of the facts is sufficient to establish good faith. Having thus obtained the facts, it was still charged with the duty of acting upon the same in a good-faith manner.

Shortly after the Zamecnik action was filed a series of conferences took place between the attorneys representing the various parties concerning its settlement. Conciliation hearings were had before a court relative to compromising the action. These conferences and this hearing before the court were participated in at one time or another by attorneys representing Zamecnik, Allis-Chalmers, Royal Transit, the instant defendant and the company which had reinsured the risk. A significant and

important fact is shown as a result of these numerous conferences, that is, that the question of liability was not discussed. It is implicit in the testimony concerning these conferences as well as the proceedings at the conciliation hearing that all the attorneys recognized that Zamecnik could establish liability. The whole controversy concerned the amount for which a settlement should be made. Even the attorneys for the defendant who tried the Zamecnik case urged that a settlement be made. The attorney for the reinsurance company, in the presence of counsel for the defendant as well as counsel for Royal Transit, stated that he told them "that it had been my opinion right along that it was a liability case, and a case that should be settled, and I thought the time had come to make a definite move to submit a substantial offer to the plaintiff. Inquiry was made as to what I considered a substantial offer, and I suggested that I thought that an offer of at least $35,000 should be made."

Defendant's agent, L. P. Miller, appears to have had complete control of all negotiations relative to a settlement and compromise of the Zamecnik claim and it was his decision on behalf of the defendant which prevented a settlement, this notwithstanding the fact, as the lower court found, that such a settlement could have been effected for $40,000, of which amount Royal Transit agreed to pay $5,000. As to Miller's attitude, the lower court found:

" * * * that said Miller stubbornly and persistently refused to adopt any of the suggestions of other attorneys of wide experience in negligence cases when they advised settlement for less than the policy coverage and he obstinately and in bad faith repudiated and overrode the suggestions of the attorneys for the reinsurer and defendant's own attorneys who were conducting the defense of the Zamecnik case when they both advised and urged settlement for $35,000.00."

We think the evidence adequately supports the characterization which the court thus applied to Miller. When one man with the power to make decision persists in a refusal to entertain a compromise under the circumstances here shown, contrary to the considered judgment of the lawyers representing all the parties interested in the litigation, a serious question arises as to his honesty and good faith. Especially is this so in view of the flimsy nature of his excuse for so refusing. He treated the matter, so he testified, as "a horse-trading proposition." We assume that even a "horse trader" if successful must at some point make an offer. After Zamecnik had agreed to accept $40,000 in settlement, no counter proposal was made by Miller or anyone on his behalf. Assuming that he had a right, as he undoubtedly had, to make the best settlement possible for his company, yet he was under a corresponding obligation to protect the interests of the insured.

■ In our judgment, the record discloses that his refusal to discharge this obligation was arbitrary, capricious and without any rational basis, and certainly the finding of bad faith is amply supported. As the court stated in Traders & General Ins. Co. v. Rudco Oil & Gas Co., 10 Cir., 129 F.2d 621, 627, 142 A.L.R. 799, with reference to a similar situation:

"Exclusive authority to act does not necessarily mean the right to act arbitrarily. * * * The right to control the litigation in all of its aspects carries with it the correlative duty to exercise diligence, intelligence, good faith, honest and conscientious fidelity to the common interest of the parties."

■ Lastly, the defendant contends that the court below erred in finding that the defendant's risks amounting to $45,000 were reinsured in the amount of $40,000, so that its real liability was only $5,000. Even though there be merit in this contention, which we doubt, the defendant is in no position to raise it on this record. True, plaintiff's witness Quarles (attorney for Allis-Chalmers) and plaintiff's witness Wengert (attorney for Royal Transit) were permitted to testify over an objection that the testimony was "irrelevant, incompetent and immaterial," concerning certain conversations with Martin Paulsen (attorney for the reinsurer) as to the amount of the reinsurance contract. It would seem that a more appropriate objection would have been that such testimo-

ny was hearsay. However, the fact remains that during the trial and prior to the testimony complained of the witness Paulsen testified, without objection, "I was representing the Employer's Re-Insurance Corporation of Kansas City. They reinsured the Central Surety and Casualty Insurance Company on everything above $5,000.00 on this particular risk." Moreover, in the absence of any authority to the contrary, we are of the view that this testimony was competent as bearing upon the defendant's good faith. As already noted, the Zamecnik claim could have been settled for $40,000, of which Royal Transit agreed to pay $5,000. It follows that the defendant would have been required to pay $35,000 ($10,000 less than the face of its policy) in order to have consummated a settlement, but of this amount the defendant would have been reimbursed by its insurer in the amount of $30,000. In other words, it would actually have cost the defendant $5,000. Notwithstanding this comparatively small amount which it would have been required to pay, it refused to permit a settlement in face of the fact that it was urged to do so by its reinsurer.

The judgment is affirmed.