Joseph D. ANDERSON, Trustee in Bankruptcy for James T. Goldsberry, Plaintiff-Appellee,

v.

ST. PAUL MERCURY INDEMNITY CO., St. Paul Fire & Marine Insurance Company, and St. Paul Mercury Insurance Company, Defendants, Appellants.

No. 14596.

United States Court of Appeals Seventh Circuit.

Jan. 19, 1965.

Rehearing Denied Feb. 26, 1965.

Roland Obenchain, Jr., and Jones, Obenchain, Johnson, Ford & Pankow, South Bend, Ind., for appellants.

Marshall F. Kizer, Richard F. Joyce, Plymouth, Ind., for appellee.

Before HASTINGS, Chief Judge, DUFFY, Circuit Judge, and CAMPBELL, District Judge.

CAMPBELL, District Judge.

This is an appeal from a judgment, entered on a jury verdict, by the District Court for the Northern District of Indiana awarding plaintiff-appellee, a Trustee in Bankruptcy, damages against the defendants-appellants, casualty insurance companies, who were the liability insurers on the automobile of a bankrupt.

Briefly the facts are that one Leon Allison instituted suit against James T. Goldsberry in the Superior Court of St. Joseph County, Indiana, for personal injuries sustained in an intersection collision of his automobile with that of Goldsberry. Goldsberry was insured and defendant by the defendants, St. Paul Mercury Indemnity Co., St. Paul Fire & Marine Insurance Co., and St. Paul Mercury Insurance Company, hereinafter jointly referred to as the Insurance Company. The jury returned a verdict upon which judgment was entered against Goldsberry and in favor of Allision for $75,000. No appeal was taken from this judgment. The Insurance Company paid its policy limit of $15,000 to Allison. Goldsberry being unable to pay the $60,000 policy limit excess filed a petition in bankruptcy.

The plaintiff-appellee Trustee in Bankruptcy, hereinafter referred to as the Trustee, instituted the instant action against the Insurance Company. The complaint, in three counts, in summary alleged that Goldsberry's $60,000 debt was caused by his insurer, the Insurance Company's, 1. negligence 2. bad faith and 3. willfulness and gross negligence in failing to settle Allison's claim within his policy limits. As to counts 2 and 3 (bad faith and wilfulness) the jury found for the defendant Insurance Company. As to Count 1, alleging negligent handling of the claim, the jury found for the Trustee, whereupon the judgment now appealed from was entered upon the verdict for the $60,000 policy excess. (Properly computed with interest the exact judgment was for $78,260.)

The Insurance Company, not as the main thrust but rather in support of this appeal, alleges error in sundry evidentiary rulings and instructions to the

jury. A review of the rulings and instructions complained of show these assignments of error to be of no merit.

■ Also without foundation in the record is the contention that the evidence introduced at the trial was insufficient to prove the negligence allegation to justify the verdict and judgment. Briefly, the evidence, viewed as it must be in a light most favorable to the prevailing Trustee, establishes that although the Allison-Goldsberry case was an intersection collision there were strong reasons to attribute negligence to Goldsberry's driving and equally weak indications of contributory negligence by Allison. The language of Judge Major in Royal Transit, Inc. v. Central Surety and Insurance Corporation, 7 Cir., 168 F.2d 345, 347 seems particularly appropriate:—"Any belief entertained by the defendant that it could successfully defend the cause of action there asserted must have sprung from an optimism unrelated to the realities of the situation". In the esoteric words of the Personal Injury Bar, this was "for purposes of settlement negotiations a liability case". The seriousness of Allison's injuries were beyond question and there were both specific and general offers and many indications that Allison, prior to trial, would have settled for a sum less than the policy limits. The policy limits, unobtainable in Indiana by discovery, were never disclosed to Allison's attorney, however, during negotiations prior to trial, Allison's attorney did at one point express a willingness to settle the claim for $9,000 if the policy limits were $10,000. Intra-company correspondence revealed that experienced personnel in the employment of the Insurance Company with commendable clairvoyance appreciated the potential of the claim and the modicum of success that could possibly be augured from a trial of the issues. In sum then, the libiality issue was weak, the injuries were substantial and the demands made in the face of such extreme exposure were reasonable. These facts were sufficient to justify a jury in finding as this jury did that the liability insurer in handling the claim was negligently unreasonable in obdurately failing to negotiate a settlement and that its conduct created an undue risk to its insured.

Accepting, as we must, the jury's determination that the Insurance Company was negligent in its defense of the claim and in its representation of the interests of its assured, we turn to what we feel to be gravamen of the appeal and the primary issue of the case; under Indiana law what standard of conduct is required of a liability insurer in its defense of a claim against its assured? To hold an insurer liable beyond policy limits is it sufficient to prove mere negligent conduct in defending the claim or, is it required that the insurer be proved guilty of bad faith or fraud? This issue is neither new to this court nor possessed of unanimity of resolution in the various states. By way of illustrating both this court's familiarity with and state courts' divergency of opinion we need only cite two cases decided by this court which in following applicable state law (Wisconsin and Illinois) arrived at opposite conclusions. In Byrnes v. Phoenix Assurance Company of New York, 7 Cir., 303 F.2d 649, Chief Judge Hastings, citing Berk v. Milwaukee Automobile Ins. Co., 245 Wis. 597, 15 N.W.2d 834, interpreted and followed Wisconsin law which requires an insurer be found guilty of bad faith to be held liable in excess of policy limits. Conversely, when required to follow the law of Illinois, Chief Judge Hastings, recognizing the different interpretations involved, found that an insurer's liability beyond policy limits might properly be predicated not only upon bad faith but upon mere negligence as well. General Casualty Company of Wisconsin v. Whipple, 7 Cir., 328 F.2d 353.

The present issue is of course resolved by and dependent upon the law of the State of Indiana. Our review of the Indiana decisions fails to disclose any intention or desire on the part of the Indiana Courts to protect liability insurance carriers beyond the common law negligence criteria.

The Insurance Company relies on Kingan & Co. v. Maryland Casualty Co., 65 Ind.App. 301, 115 N.E. 348, a 1917 Indiana Appellate Court decision. However, Kingan is unavailing, the plaintiff there having filed suit *ex contractu* on the insurance policy contract and not as here on a common law negligence theory. The court specifically leaves open and undecided the present issue stating: "Liability might, however, be based on negligence in conducting such defense, but there is neither finding nor charge to that effect here". (Id. 115 N.E. p. 351).

On the other hand, although admittedly not directly on point, the Trustee cites and relies on Flint and Walling Mfg. Co. v. Beckett, 167 Ind. 491, 79 N.E. 503, 12 L.R.A.,N.S., 924, a 1906 Supreme Court of Indiana case. Distinguishable in that no specific mention is made of the liability insurer-insured situation, the court did, however, clearly enunciate and approve the more generic legal proposition that suit in tort may be brought for the negligent performance of a duty, notwithstanding that the duty in part results from a contract.

This general expression by the Indiana Supreme Court in Flint & Walling Mfg. Co., buttressed by the absence of any decision even suggesting the possibility of a contrary view, convinces us that in this type of litigation Indiana like Illinois and unlike Wisconsin is a negligence as well as a bad faith state and not just a bad faith state.

Finally, we consider the Insurance Company's contention that the Trustee was without capacity to sue, a contention premised on the suggestion that the bankrupt-insured has sustained no actual loss. Reliance in this regard is placed upon a 2nd Circuit decision in Harris v. Standard Accident and Insurance Company, 297 F.2d 627. Assuming, without deciding the correctness of the Harris case, the factual posture upon which it was decided is absent here. In Harris the bankrupts were insolvent independent of and prior to the entry of the excess judgment. For that matter the court seemingly indicates that its decision would be otherwise if the bankrupts were not already insolvent at the time the excess judgment was entered. (The court reversed a district court policy-excess judgment against the liability carrier on the grounds that the bankrupts sustained no loss.) In distinguishing a case wherein recovery was permitted against a liability insurer (Brown v. Guaranty Ins. Co., 155 Cal.App.2d 679, 319 P.2d 69, 66 A.L.R.2d 1202) the court at page 632 of 297 F.2d stated: "However, in that case there was no evidence that the insured was insolvent *before* the excess judgment was imposed upon him, as were the Massellos". In the case before us the bankrupt Goldsberry was not insolvent prior to the entry of the judgment and but for the judgment would not have become a bankrupt.

Even without recourse to the distinguishing feature in Harris it is axiomatic and the underlying philosophy of bankruptcy law that in exchange for a discharge of all liability of the bankrupt, the Trustee in Bankruptcy takes all rights of the bankrupt arising therefrom. This *quid pro quo* of necessity includes any and all rights and choses in action a bankrupt might have had under any judgment his discharge in bankruptcy may have expunged. Any asset or chose in action of the bankrupt which could have been enforced by the bankrupt had he not gone into bankruptcy automatically vests in and becomes the property of the Trustees in Bankruptcy. (11 U.S.C.A. § 110, sub. a(5)).

The judgment appealed from is affirmed.