BAKER, Respondent, v. NORTHWESTERN NATIONAL CASUALTY COMPANY, Appellant.

*November 26—December 20, 1963.*

[6] See *Pecor v. Home Indemnity Co.* (1940), 234 Wis. 407, 419, 291 N. W. 313, and cases cited therein.

78

For the appellant there were briefs and oral argument by *Ray T. McCann* of Milwaukee.

For the respondent there was a brief by *Aberg, Bell, Blake & Metzner* of Madison, and oral argument by *Carroll Metzner*.

CURRIE, J.  Northwestern concedes that there are disputed questions of fact but contends that these are immaterial because Northwestern is entitled to summary judgment as a matter of law.  It asserts that, even though the disputed facts be decided in Baker's favor, they would establish only negligence on Northwestern's part, not bad faith, and that Northwestern's liability can only be predicated upon bad faith. *Berk v. Milwaukee Automobile Ins. Co.* (1944), 245 Wis. 597, 15 N. W. (2d) 834, and *Maroney v. Allstate Ins. Co.* (1961), 12 Wis. (2d) 197, 107 N. W. (2d) 261, are cited as supporting authority.

The holding of the *Berk* and *Maroney Cases* is accurately stated in headnote 1 of the *Maroney Case* (p. 197) as follows:

"It is not bad faith if counsel for an automobile liability insurer refuses to settle the claim of an injured person under the *bona fide* belief that the insurer might defeat the action or keep the verdict within the policy limits, and even though it may be that the insurer acted negligently, exercising poor judgment, it is not enough to show that the insurer acted negligently in deciding to litigate rather than to settle the case, bad faith being a species of fraud requiring clear, satisfactory, and convincing evidence to sustain a finding thereof."

Therefore, if Baker had grounded his cause of action against Northwestern solely on the facts: (1) That Northwestern had rejected an offer by Walker to settle the latter's negligence action for the policy limit of $25,000, and (2) that the final judgment recovered by Walker against Baker and Northwestern was in excess of $40,000, Northwestern would have been entitled to summary judgment under the rule of the *Maroney* and *Berk Cases*. The facts before the circuit court, however, were not so limited. The materiality of these additional facts will be considered after we first examine the applicable law bearing on the issue of Northwestern's exercise of good faith.

The most-illuminating discussion bearing on this issue is found in Mr. Justice OWEN's well-reasoned opinion (on reargument) in *Hilker v. Western Automobile Ins. Co.* (1931), 204 Wis. 1, 12 *et seq.*, 231 N. W. 257, 235 N. W. 413. It was therein held that a correlative duty on the part of the insurer to exercise good faith toward the insured, in determining whether or not to settle, arises from certain provisions of the insurance contract. These provisions turn over to the insurer absolute control of the defense of any action brought against the insured which asserts a liability that lies within the coverage of the contract, and exclude the insured from interfering in any negotiations for settlement. As significantly noted by Mr. Justice OWEN in the *Hilker Case,* in order for the insurer to make a good-faith decision not to settle within policy limits, it must have made a diligent effort to ascertain the facts upon which only an intelligent and good-faith judgment may be predicated. The test of such diligence is that "which a man of ordinary care and prudence would exercise in the investigation and adjustment of claims." The opinion also states that the insurer has a further duty in addition to that of exercising diligence to ascertain the facts determining liability. This further duty is stated in these words (p. 15):

"In addition to this, a further duty plainly devolves on the insurer. After it has made an investigation of the accident and the injury, and faces the probability that a recovery will exceed the indemnity, it plainly becomes the duty of the insurer to indicate such fact to the insured, to the end that he may take such steps as may be open to him for his own protection."

Thus, the *Hilker Case* in effect holds that the failure of the insurer to have performed either or both of the foregoing duties prevents its decision not to settle within policy limits from being one made in good faith. In addition to the duties stressed in the Hilker Case there must be added a third duty which is imposed upon the insurer as a result of the insured's surrendering to it the sole control of all settlement negotiations, namely, that of keeping the insured timely and adequately informed of any offers of settlement received from the claimant and of the progress of any settlement negotiations. *Brown v. Guarantee Ins. Co.* (1957), 155 Cal. App. (2d) 679, 689, 319 Pac. (2d) 69, 66 A. L. R. (2d) 1202. See also *Byrnes v. Phoenix Assurance Co. of New York* (D. C. Wis. 1959), 178 Fed. Supp. 488, 490, and Anno. 40 A. L. R. (2d) 168, 216, sec. 17. Failure of the insurer to perform any one or more of these three duties presents a jury issue with respect to whether the insurer acted in good faith in refusing to settle within policy limits. There may be other factors bearing on the insurer's good faith, in addition to its failure to perform these specified duties, but we find it unnecessary to explore these in resolving the instant appeal.

Keeping these three duties of the insurer in mind, we now turn to the record made on the motion for summary judgment in order to ascertain whether any issue of fact was presented with respect to Northwestern's alleged failure to perform any or all of them.

With respect to the duty to make a diligent investigation of the facts, paragraph 8 of Baker's amended complaint alleged:

"That defendant through its attorneys acted in bad faith toward the plaintiff and in utter disregard of his rights and interests and did wrongfully, negligently and in bad faith fail to obtain all pertinent information relating to the physical condition of Robert Walker, and did wrongfully, negligently and in bad faith fail to request or obtain all medical reports and information available from the doctors and dentists who had treated and examined Robert Walker, and did wrongfully, negligently and in bad faith fail to request or obtain independent medical or dental examinations of Robert Walker as permitted by law to enable defendant to properly evaluate said claim for purposes of settlement and to adequately prepare for trial."

Northwestern's answer denied these allegations. In Block's adverse examination he admitted that he had not caused any independent medical or dental examinations to be made of Walker before trial. However, he testified further that Rosenberg, an attorney employed in Northwestern's claims department had made a verbal report to Block concerning the nature of Walker's injuries and that these were the same as Walker's doctors and dentists later testified to at the trial of the Walker action. The only written medical report on Walker which Block and Northwestern had obtained was a copy of a letter, dated January 30, 1960, sent to Walker's attorney by the clinic of which Walker's two examining physicians were members. This letter, which was not made a part of the record, set forth the examining physicians' findings with respect to Walker's condition. Block further testified that he knew Walker's two doctors and dentists, had full confidence in their honesty, integrity, and ability, and considered that an independent medical or dental examination would have served no purpose because he felt from his experience he "could safely rely on the reports that had been furnished to us." At least, without this letter before us, we cannot hold as a matter of law that no jury issue was presented with respect to whether Northwestern had

used due diligence in investigating the nature of Walker's injuries.

Paragraph 9 of the amended complaint alleged in part as follows:

"That the defendant never through its attorneys or otherwise gave any indication that there was danger of a judgment exceeding the amount of insurance available under defendant's policy and, in fact, by word and conduct minimized the possibility of the judgment exceeding such amount."

This was denied by Northwestern's answer. Block by affidavit stated that on at least one occasion Baker was informed that no assurance could be given to him that a judgment in the action would not exceed policy limits and court costs. This affidavit also stated that Baker was advised that he was entitled to secure counsel of his own choice to represent him in the defense of the action in view of the demands of the complaint for judgment in excess of policy limits. Baker never engaged counsel to represent him in the suit brought by Walker but was represented by separate counsel in the action Baker instituted against Walker. Baker in his adverse examination testified that as far as he could remember he had but one conversation with Block before trial of the possibility of a verdict in excess of the policy limit and that this "was a very casual conversation." Baker described the content of this conversation as follows: "He [Block] remarked something to the effect, substantially, he said 'You know the suit is for $50,000, which is over my policy limits,' and he said, 'You know that we are supposed to write you a letter informing you of this, but—,' and then he trailed off into something else, and that was about all the conversation I ever had with him specifically about that." Later, in his adverse examination, Baker further testified, "However, again, at all times he [Block] minimized the

danger of the exposure and, as I say, at one time I specifically remember him saying that everybody sues for at least twice what they expect to collect. [In saying he minimized the danger], I can only refer to what I have already said. He was very casual and offhand about it."

We hold that on this state of the record a jury issue was presented as to whether Northwestern had performed its duty of sufficiently advising Baker of the probability of a recovery in excess of policy limits. While we entertain serious doubt that Block was as casual about advising Baker of this probability as Baker testified, nevertheless Baker's credibility is for the jury, not the circuit court nor this court.

Lastly, there remains for consideration the state of the record with respect to Northwestern's duty to timely and adequately advise Baker of all settlement offers received from Walker, and of the progress of any settlement negotiations. The amended complaint alleged upon information and belief that Northwestern had received more than one offer to settle the Walker action for $25,000, the policy limit; that Northwestern failed to advise Baker of these offers but instead told him that no offer had been received within policy limits; and that Northwestern falsely informed Baker that the only settlement offer it had received was one which would require Baker to personally contribute $6,000 or $7,000 above the policy limit of $25,000. Northwestern's answer denied these allegations. Baker in his affidavit stated that he asked Block, "Do you mean that the lowest figure he [Walker] will consider is $31,000 or $32,000," and that Block "answered in the affirmative." Block in his affidavit stated that he had formed an opinion after a thorough investigation of the facts that the verdict and judgment in the Walker action would not exceed $18,000; that, contrary to Baker's statement that the only offer of settlement received was for policy limits plus $6,000 or $7,000, Block had informed Baker that Walker's demands were for policy limits,

and that this was $6,000 or $7,000 more than "we had evaluated the top value of Walker's case for settlement purposes." Block's affidavit further stated, "that at no time did Baker suggest or intimate that he wished the claim settled for policy limits and costs, but on the contrary, always expressed the opinion that the entire responsibility for the accident rested on Walker, and that he, Baker, should recover damages."

Thus the record in this third respect discloses a material issue of disputed facts which cannot be resolved on a motion for summary judgment.

*By the Court.*—Order affirmed.