ALT, a minor, by ARLO MCKINNON, his Guardian *ad litem*, and another, Appellants, v. AMERICAN FAMILY MUTUAL INSURANCE COMPANY, a Wisconsin insurance corporation, Respondent.

*No. 108 (1974). Argued November 25, 1975.—Decided February 3, 1976.*
(Also reported in 237 N. W. 2d 706.)

For the appellants there were briefs by *Kersten & McKinnon,* and *Kenan J. Kersten* and *Kevin M. O'Donnell,* all of Milwaukee, and oral argument by *Kenan J. Kersten.*

For the respondent there was a brief by *Alberg, Bell, Blake & Metzner, S. C.* of Madison, and oral argument by *Carroll E. Metzner.*

HEFFERNAN, J. This is an appeal from a summary judgment dismissing the plaintiffs' complaint. This case arises out of an automobile-pedestrian accident which occurred on November 10, 1969. The injured person in that accident was Leslie S. K. Alt, age six at the time of the accident. The driver of the vehicle was Rowena R. Jorgensen. Rowena R. Jorgensen's automobile liability insurance company, American Family, afforded coverage only in the amount of $50,000. After trial, the jury

brought in a verdict of $329,478.30 or $279,478.30 in excess of coverage. Judgment for the excess was taken against Rowena Jorgensen. Rowena Jorgensen has assigned her cause of action against American Family to the injured minor and to his father.

The Alts commenced the instant action on the assigned claim against American Family for its failure to exercise good faith in the settlement of the Alts' case against Rowena Jorgensen.

The only question posed on this appeal is whether, in a claim against an insurance company for liability for failure to settle a claim, there must be evidence of an unequivocal and legally binding offer before a jury issue can be raised in respect to an insurer's lack of good faith.

The trial court, although recognizing that the affidavits submitted by the parties on summary judgment raise substantial factual disputes, concluded that the resolution of the legal issue stated above constituted an overriding proposition that rendered a jury resolution of the disputed factual issues unnecessary.

We conclude that the trial court erred in holding that a legally binding offer by the claimant is a prerequisite to maintaining an action for bad faith where an insured has been exposed to excess liability. We reverse.

The plaintiffs herein alleged that the insurance company failed to make a timely and diligent investigation to discover the severity of the injuries suffered by the minor and the probable liability on the part of its insured, Jorgensen; that Jorgensen was not informed that the recovery on the claims would probably exceed the policy limits; that the insurance company failed to inform its insured, Jorgensen, of offers of settlement received from time to time from the plaintiffs in the original action; that it failed to make a timely evaluation of the claim; and that it failed to settle the claims within the policy limits when it had an opportunity to do so.

On this appeal the respondent insurance company does not dispute the trial judge's view that factual issues were raised by the summary judgment affidavits. The insurance company reasons, as did the trial judge, that, because the offers for settlement were not binding, they triggered no duty on the part of the insurance company to attempt settlement within the policy limits. It is thus evident that this case reaches us in the posture requiring that only the legal question posed be decided.

The record shows that on the very day the accident occurred, the American Family Mutual Insurance Company was notified by one of its agents that its insured had struck the Alt child with her automobile and that the child had sustained a severe injury. It is implicit in the record that, from the very outset of the claim, it should have been apparent to a reasonable lawyer or claims investigator that the case was one of probable liability and that the damages might well be in excess of the policy limits. We refrain, however, from comment or conclusion in respect to the duty of the insurance company at the inception of the claim procedure to have attempted settlement. These are issues which must be reserved for the jury.

There were three alleged settlement offers made by Alts' counsel, attorney Stephen R. Miller, prior to trial. Even the fact that all of these offers were made is disputed and that factual dispute must be resolved by the jury. The judge at the summary judgment proceedings concluded, however, that, were those offers made, they were legally irrelevant because they were not binding.

The first offer, according to attorney Miller, was made on April 15, 1970, prior to the commencement of the action. Miller claims that he telephoned James R. Lund, American Family's district claims manager, and offered to settle the claims of the child and of his father for the policy limits of $50,000. Miller claims that Lund stated he would get back to Miller on this proposition, but he

never did so. Lund denies that this conversation ever took place, and there is no evidence that the offer, if made, was communicated to Rowena Jorgensen.

The lawsuit in the original case was commenced on May 5, 1970, and on May 27, 1970, Arlo McKinnon was formally appointed as guardian *ad litem* for the minor plaintiff.

A second offer allegedly was made at a pretrial conference held on April 1, 1971, before Judge HARVEY L. NEELEN. At this conference, attorney Miller gave the court and counsel for Rowena Jorgensen and her insurance company medical records that showed the Alt child had incurred medical bills in excess of $16,000 and reports showing that he had suffered severe brain damage, the loss of vision of the left eye, and severe and permanent motor disability. Miller states that he offered to settle all the claims for the policy limit of $50,000. That this offer was made was denied by American Family's attorney, Edward J. Simarski, and attorney Emmett E. O'Connell, who was the personal attorney for Rowena Jorgensen. The guardian *ad litem*, Arlo McKinnon, was not present at the pretrial conference.

According to attorney Miller, Judge NEELEN recommended to Simarski at the conference that American Family pay its policy limit of $50,000 in settlement. While it is denied by Simarski that an offer was made, only five days later, attorney Simarski reported to his client, American Family, on the pretrial conference held before Judge NEELEN. He told his client that:

"Judge NEELEN says that in view of the injuries involved he didn't feel that a jury was going to let our driver out of the case without finding some negligence. He recommended that we throw in our $50,000 policy."

Although attorney Simarski did not recommend settlement at that time, he advised his client that the plaintiff was six years old and could not be held contributorily

negligent and that "we have a very serious damage exposure here."

The record fails to show that Miller's offer, if it was made, was communicated to Rowena Jorgensen and it is also clear that the affidavits do not agree that Judge NEELEN had recommended settlement in the amount of $50,000, although the letter of Simarski to American Family would tend to confirm the Miller affidavit that he indeed had done so.

A third offer allegedly was made as a result of negotiations triggered by a letter of Mr. Alt to attorney Miller on October 5, 1971. On that date, Alt told Miller that if American Family made an unequivocal offer to pay its policy limits, he would follow Miller's recommendation and send a written authorization to accept that offer and to release Rowena Jorgensen and her insurance company. Mr. Alt placed an October 15, 1971, deadline on his willingness to accept such an offer if made. On October 7, 1971, attorney Miller wrote attorney Simarski, stating:

"I wonder if your company would be interested in paying in its limits in order to get itself and insured out of the case. I would be inclined to recommend this to the client, if this could be arranged before the 15th of October, 1971. After that time, I have to bear down on trial preparation, and we have to advance substantial costs for expert witnesses."

No response was received from American Family prior to the deadline. Although the letter was understood by American Family's Milwaukee area branch counsel as a settlement demand in the sum of $50,000, there is nothing in the record to show that either Rowena Jorgensen or her attorney, Emmett O'Connell, were informed of Miller's October 7th offer until October 25, 1971. On that date Simarski, on behalf of American Family, by letter, offered to pay the policy limits of $50,000. On October 26, 1971, Alt, by letter, advised attorney Miller:

"You have informed me that the American Family Insurance Company has not responded to our offer to settle this case within the limits of the policy in question. Therefore, we have no choice but to be resolute and proceed to verdict."

On October 28, 1971, apparently in response to the Simarski letter of October 25th, Miller wrote Simarski, telling him that he no longer had authority from his client to settle for $50,000. A formal offer of judgment was rejected by Miller on November 2, 1971, and the case went to trial on November 16, 1971.

Whether the first two offers were made at all is disputed. If that dispute is material, the facts must be decided by the jury. However, American Family contended, at the time of the motion for summary judgment, that even were the offers made, they had no legal effect, because there was no participation in the proceedings by the minor's guardian *ad litem,* Arlo McKinnon.

It was the trial judge's theory also that, unless the offers were participated in by the guardian *ad litem,* any attempt by American Family to accept attorney Miller's proposal would be a nullity. The trial judge also concluded that there was no bad faith in respect to Rowena Jorgensen, because neither she nor her lawyer made demand that American Family settle this case within the policy limits.

We conclude that the trial judge erred in respect to both of these propositions.

The basic premise of the insurance company herein is that the question of the insurance company's responsibility is presented only when a "legal" offer is made to it by a claimant and it "refuses to settle."

The trial judge relied on *Baker v. Northwestern National Casualty Co.* (1963), 22 Wis. 2d 77, 125 N. W. 2d 370 *(Baker I).* We conclude that he misstated the rationale of *Baker. Baker* emphasizes that there are "at least" three affirmative duties that fall upon an insurance company in respect to its insured. It must make a dili-

gent effort to ascertain the facts upon which only an intelligent and good-faith judgment may be predicated. In addition, the insurance company has a duty to determine the probability that recovery will exceed the indemnity and to make a full disclosure to the insured so that the insured may protect himself to the extent possible. *Baker* added a third duty, not previously stated in Wisconsin cases—the responsibility of keeping the insured timely and adequately informed of any offers of settlement from the claimant and of the progress of any settlement negotiations.

It should be noted, in passing, that there is nothing implicit in the reasoning of *Baker* that would lead to the conclusion that an insurance company would be exonerated from bad faith in an instance where it made no investigation whatsoever even though no demand had been made for settlement.

While *Baker* conceivably could be construed to require a prior offer of settlement from the claimant to trigger any insurance company responsibility, that interpretation is strained. The refusal to settle may indeed mean the refusal to accept an offer, as the trial judge believed. It also means, however, failure to settle when there was an opportunity to do so.

An examination of the Wisconsin cases dealing with "refusals to settle" indicates rather clearly that the submission of a legally binding offer from a claimant is not a necessary condition antecedent to the maintenance of a bad-faith excess-liability action.

*Baker* relies heavily upon the reasoning of *Hilker v. Western Automobile Ins. Co.* (1931), 204 Wis. 1, 231 N. W. 257, 235 N. W. 413. Therein the court emphasized that the duty of the insurer to exercise good faith toward the insured in determining whether or not settlement should be undertaken by the insurer arises from the provisions of the insurance contract which give the insurer absolute control of the defense of any claim against the insured and which exclude the insured from any

settlement negotiations on his own. That case established the standard:

"But the good-faith performance of the obligation which the insurance company assumed when it took to itself the complete and exclusive control of all matters that determine the liability of the insured, requires that it be held to that degree of care and diligence which a man of ordinary care and prudence would exercise in the management of his own business were he investigating and adjusting such claims." *Hilker*, p. 10.

That standard was attacked upon rehearing, because, it was argued, this would hold an insurer to the negligence standard of care rather than the duty not to act in bad faith. On rehearing, the court specifically reaffirmed the original language, saying, in respect to the duties of the insurance company:

". . . it should exercise reasonable diligence . . . which means such diligence as the great majority of persons use in the same or similar circumstances. This is ordinary care." *Hilker*, rehearing, p. 15.

It is obvious, then, that what we speak of when referring to bad faith is the breach of a known fiduciary duty. This carries with it the duty to act on behalf of the insured and to exercise the same standard of care that the insurance company would exercise were it exercising ordinary diligence in respect to its own business. Since that is the accepted standard, an insurance company, in which is vested the exclusive control of the management of a case, breaches its duty when it has the opportunity to settle an excess liability case within policy limits and it fails to do so. Only if the overtures towards settlement appear, as were said in *Baker v. Northwestern National Casualty Co.* (1965), 26 Wis. 2d 306, 313, 132 N. W. 2d 493 *(Baker II)* to be "jocular or frivolous," may an insurance company ignore them, and even then it does so at its peril.

In addition to the general language of *Hilker*, that case specifically stated that an insurance company would be

liable not only for refusing to settle, *i.e.,* failure to accept a reasonable offer, but could also be held liable for "failing to settle." Certainly, this second prong of liability is indicative of an affirmative duty on the part of the insurance company to compromise claims. This duty is, of course, intimately related to its affirmative duty to investigate. A proper investigation should impel a response by the insurer and a determination of whether liability is clear and whether the exposure may jeopardize the insured by being in excess of the policy limits.

In *Hilker,* the court held there could be liability where the claimants were "ready to settle." *Hilker,* p. 9. The facts in *Hilker* also show that the insurance company made an offer to settle which was below the policy limits. In response to that offer, the claimant's attorney stated that:

". . . the offer was too small, but that if it were raised . . . he would submit it and probably or possibly his clients would accept it." (P. 9)

In respect to that incident, this court stated:

"The record contains no evidence of any further effort on the part of those representing the insurance company to settle these claims." (Pp. 9, 10)

After discussing further omissions of duty by the insurance company, including the failure to interview some of the witnesses, a fact also apparently present here, the court in *Hilker* stated:

"Under such circumstances the failure to make some more effective effort to adjust the cases does present evidence which sustains the finding that the defendant acted in bad faith toward the plaintiff in handling these claims and conducting this litigation." (P. 10)

In *Hilker,* therefore, an affirmative duty was recognized, at least to the extent that, when a claimant's attorney made overtures, though not of a binding nature, the insurance company had the duty on behalf of its

insured to "make some more effective effort to adjust" the claim. (P. 10)

In *Maroney v. Allstate Insurance Co.* (1961), 12 Wis. 2d 197, 107 N. W. 2d 261, summary judgment was granted the insurance company where there was *no evidence* to show any willingness on the part of the claimant to settle within the policy limits. Although the court held that the mere willingness of a claimant to settle does not trigger possible bad-faith liability on the part of an insurance company if it believes it has a bona fide defense that might defeat the action, the implication is clear that if an insurance company is advised of a claimant's willingness to settle within the policy limits and if there is no bona fide belief in a liability defense, a jury question in respect to bad faith is presented.

It is alleged in the instant case that there was no defense in respect to liability and that, at the very least, there is evidence that counsel for the insurance company was aware of the claimants' willingness to settle within the policy limits.

All prior Wisconsin cases indicate that an insurance company has more than a passive role—that, in some circumstances at least, it has an affirmative duty to seize whatever reasonable opportunity may present itself to protect its insured from excess liability.

In *Baker v. Northwestern National Casualty Co.* (1965), 26 Wis. 2d 306, 313, 132 N. W. 2d 493 *(Baker II)*, which came to this court following the remand of the first *Baker Case, supra,* this court, in upholding the finding of bad faith in respect to compromise offers, stated:

"We recognize that an attorney does not have to take seriously *all* comments relating to settlement. Occasionally remarks are made between competing counsel which are of a bantering nature and are not meant to be taken seriously. We do not suggest that such casual conversations need be forwarded by an insurer to its policyholder or by an attorney to his client. However, in a case in-

volving a probable overage, an insurance carrier must be circumspect to communicate all offers which are not patently jocular or frivolous."

The record in the second *Baker Case* made it clear that the conversations between counsel which triggered the finding of bad faith were, at the most, settlement overtures. They were not binding offers to settle. They were referred to by this court merely as "settlement prospects." (P. 314)

We, accordingly, conclude that the trial court in this case incorrectly held that an insurance company has a responsibility to accept settlement within policy limits only if a legally binding offer has been received from the claimant. While, in the instant case, the affidavits on summary judgment show a dispute in respect to whether Offer One and Offer Two were ever made, it is clear that the third offer to settle within the policy limits was made on or about October 7, 1971.

We believe that the position which this court has, by implication, taken in the past and which we specifically adopt in this case was well stated in the New Jersey case of *Rova Farms Resort, Inc. v. Investors Insurance Co. of America* (1974), 65 N. J. 474, 323 Atl. 2d 495. In *Rova*, the court noted:

"Despite the fact that the holdings in *Bowers* and the other main New Jersey cases cited involved firm claimant offers, it would be unrealistic to believe that such an offer is a prerequisite for finding the insurer to have acted other than in good faith. . . . The better view is that the insurer has an affirmative duty to explore settlement possibilities. . . . At most, the absence of a formal request to settle within the policy is merely one factor to be considered in light of the surrounding circumstances, on the issue of good faith. . . ." (P. 493)

"We . . . hold that an insurer . . . has a positive fiduciary duty to take the initiative, and attempt to negotiate a settlement within the policy coverage. Any doubt as to the existence of an opportunity to settle within the

face amount of the coverage . . . must be resolved in favor of the insured unless the insurer, by some affirmative evidence, demonstrates there was not only no realistic possibility of settlement within policy limits, but also that the insured would not have contributed to whatever settlement figure above that sum might have been available." (P. 496)

The Tennessee Supreme Court in *State Automobile Ins. Co. of Columbus, Ohio v. Rowland* (1968), 221 Tenn. (25 McCanless) 421, 427 S. W. 2d 30, also concluded that it was incorrect to hold, as did the trial court in the instant case, that an insurance company could not be guilty of bad faith unless it received an offer of settlement within the policy limits.

The trial court, and the insurance company on this appeal, seem to equate the offers of settlement, if indeed any offers were made, with those denominated as "jocular or frivolous" in *Baker II*, because the claimant was a minor and the guardian *ad litem* had not joined in the offer. It is, of course, correct that a guardian *ad litem* must approve any settlement affecting his charge and, until that has been done, the settlement cannot be made final. Moreover, it is the practice of most insurance companies to insist that a settlement made with the consent of a guardian *ad litem* also be approved by the court. However, the fact that the agreement is not final until approved by the guardian and court does not mean that the antecedent offer is "jocular or frivolous."

In *Carey v. Dairyland Mutual Ins. Co.* (1968), 41 Wis. 2d 107, 163 N. W. 2d 200, this court held there was a legal offer and acceptance when the parties entered into a settlement agreement conditioned upon the appointment of a guardian *ad litem* for the injured party and the subsequent approval of the court. That case is admittedly distinguishable on its facts from the instant one, for, in *Carey,* no guardian *ad litem* had been appointed, and in respect to the minor Alt, a guardian *ad litem* had been

appointed but he had not participated in the settlement overtures. Nevertheless, *Carey* stands for the proposition that an insurance company will be bound by a contract of settlement if the conditions subsequent occur—the approval of a guardian *ad litem* and the approval of the court.

In the instant case, the insurance company and its lawyers were not ignorant of the law. They knew that these conditions subsequent are implicit in any settlement with a minor. In any event, we see no reason why the insurance company failed to take its obligation to its insured seriously merely because the guardian *ad litem* of the claimant failed to participate in the settlement overtures.

We hold, as did the court in *Baker*, that in all cases involving a probable overage, an insurance carrier must be circumspect in respect to all settlement overtures which are not patently frivolous, whether they be legally binding offers or not, at least in situations where it would be apparent to a reasonable insurer that excess liability was probable and liability almost certain.

As noted above, the trial judge considered the fact that at no time was a demand made by Rowena Jorgensen or her lawyer to settle this case within the policy limits dispositive of any claim of bad faith. The trial judge apparently assumed that no duty arose on the part of the insurance company to settle within the limits unless such demand were made. This proposition is contrary to the Wisconsin law. *Baker v. Northwestern National Casualty Co.* (1963), 22 Wis. 2d 77, 125 N. W. 2d 370 *(Baker I),* a case upon which the insurance company relies, points out that, at no time, did the insured intimate that he wished the claim settled within policy limits. (P. 87) Despite that fact, the court held that a jury question was presented in respect to the good faith of the insurance company for failing to settle. The most that can be said

for the proposition advanced by the trial judge in the instant case is that, where there has been proof of full disclosure to the insured, the lack of a demand to settle by the insured may be evidence of good faith, but is not conclusive.

While the *Hilker Case* makes it clear that the liability of the insurance company in a situation such as this is for negligence, *i.e.*, the breach of ordinary care in a fiduciary relationship, the burden of proof is higher than that required in most negligence cases. The claimant must assume the middle burden of proof, and the breach of the insurer's duty must be proved by clear and convincing evidence. The insurance company, however, to be liable, need not be found to have committed fraud or to have acted dishonestly in respect to its insured.

It should be emphasized that, by dealing with the legal issue in the instant case, we do not intend to foreclose any of the factual defenses which American Family Mutual Insurance Company may otherwise have to this suit for liability in excess of its policy. We hold that the insurance company is not exonerated on the grounds: (1) That the insured never made a demand for settlement, and (2) that the offers made were not "legally binding." We do hold that significant factual issues also are presented by the affidavits for summary judgment, and these must be resolved by the jury.

*By the Court.*—Judgment reversed, and cause remanded for further proceedings.