JOHNSON, and husband, Plaintiffs-Appellants, v. AMERI-
CAN FAMILY MUTUAL INSURANCE COMPANY, Defend-
ant-Respondent.

Supreme Court

*No. 77–433. Argued January 8, 1980.—Decided February 7, 1980.*
(Also reported in 287 N.W.2d 729.)

634

For the appellants there was a brief by *Richard E. Rosenberg* and *Nowlan, Mouat, Lovejoy, Wood & Cripe* of Janesville, and oral argument by *Mr. Rosenberg*.

For the respondent there was a brief by *Bell, Metzner & Seibold, S.C.,* and oral argument by *Steven J. Caulum,* all of Madison.

CONNOR T. HANSEN, J. The facts out of which this case arises are set forth in *Johnson v. Heintz,* 61 Wis.2d 585, 213 N.W.2d 85 (1973), and *Johnson v. Heintz,* 73 Wis.2d 286, 243 N.W.2d 815 (1976). The action arises out of successive auto accidents which occurred on November 20, 1964. The accidents occurred in a blizzard when the vehicle driven by Gladys Heintz, in which Emaline Johnson was a passenger, ran into the rear end of the Myrtle Bruhn car, which had stalled on the highway. While Emaline Johnson was still in the Heintz car, another collision occurred about twenty minutes later when an automobile driven by Elizabeth Thomas, coming from the opposite direction, collided with the side of the Bruhn car, forcing it to collide with the Heintz vehicle.

Following these collisions, a hospital examination of Emaline Johnson revealed that she had suffered a contusion of the right shoulder, a contusion of the right knee and other injuries. In November, 1968, she underwent surgery for the removal of cartilage from the right knee. By August of 1969 she had returned to work.

On August 12, 1969, after her return from work, she fell while hanging out clothes and sustained additional injury to her knee. It was her contention that the August, 1969, fall was the result of permanent injuries that she had sustained in the 1964 collisions.

In 1967, Emaline Johnson and her husband Donald commenced an action for damages against Gladys Heintz and Heintz's insurer, American Family Mutual Insurance Company. These defendants answered and served a third-party summons and complaint on Myrtle Bruhn and her insurer, Allstate Insurance Company, and a third-party summons and complaint on State Farm Mu-

tual Automobile Insurance Company, the insurer of the vehicle driven by Elizabeth Thomas.

Prior to trial, a $500 settlement was reached by American Family Mutual Insurance Company with Myrtle Bruhn and her insurer, Allstate Insurance Company. In the first trial the jury found Gladys Heintz 85 percent causally negligent and Elizabeth Thomas 15 percent causally negligent. Damages in the amount of $30,000 were awarded to Emaline Johnson and $5,000 was awarded to Donald Johnson.

An appeal was brought by Gladys Heintz, American Family Mutual Insurance Company and State Farm Mutual Automobile Insurance Company. This court reversed the judgment. There was no evidence to a reasonable degree of medical probability that the fall on August 12, 1969, was the result of a disability caused by the prior automobile accident. This court held that, in the absence of such evidence, it was error to submit to the jury a question which permitted it to include in its assessment of damages a sum for the injuries which the plaintiff received in August, 1969. The court also held that the jury should have determined the extent of the injuries sustained in the first impact and the extent of the injuries sustained in the second collision. Elizabeth Thomas was answerable in damages only for the injuries sustained in the second impact and the jury should have been so instructed; thus, it was error to permit the jury to conclude that each tort-feasor (Heintz, insured by American Family, and Thomas, insured by State Farm) was responsible for the total injuries which Emaline Johnson sustained in the successive impacts.

On re-trial, the jury returned a verdict in excess of $78,000, and this was affirmed on appeal. American Family immediately paid their policy limits of $25,000, plus interests and costs.

Gladys Heintz thereafter assigned to Emaline and Donald Johnson any cause of action Heintz had against

American Family arising from the company's conduct in handling the Johnsons' claims.

Emaline and Donald Johnson then commenced the instant action against American Family Mutual Insurance Company alleging that American Family was negligent and acted in bad faith in several respects concerning the investigation, evaluation, conduct and trial of the action brought by the Johnsons against American Family and its insured, Gladys Heintz.

Before considering the issues presented on appeal, we summarize the facts as testified to at the instant trial.

On November 23, 1971, three days before the pretrial conference in the original action brought by the Johnsons against both American Family and Gladys Heintz, one of the lawyers for the Johnsons, Robert Elliott, offered to settle the case for $20,000.

A few days before the first trial, in two letters to American Family, John Wickhem, one of its trial lawyers, extensively analyzed and discussed the case. It was his opinion that a settlement of the case within the range of $13,000 and $15,000 would be proper. He emphasized that Dr. Odland, Mrs. Johnson's treating physician, stated in his deposition that Mrs. Johnson's symptoms after she fell in August, 1969, were not associated with the 1964 automobile accident; and that her two other physicians could not testify that the injury to the knee in August, 1969, was caused by the 1964 accident. He also stated he had reviewed the case with counsel for both Allstate and State Farm. They all agreed Mrs. Johnson presented a negative impression as a witness at the adverse examination and had reservations as to her credibility. Wickhem expressed the opinion that he and counsel for the other insurance companies did not believe it was probable that a verdict would exceed $25,000. Wickhem stated that if satisfactory arrangements could be made with the other defendants, a settlement of $15,000 would be reasonable. However, at that time, State Farm,

insurer of Thomas, was unwilling to contribute to any settlement, so Wickhem recommended that they proceed to trial. He advised against American Family making a unilateral settlement.

By letter dated January 7, 1972, Elliott, counsel for the Johnsons, again offered to settle for $20,000. He also offered to settle for $17,500 or, in the alternative, to settle for $15,000 plus 50 percent of the contributions up to a total of $2,500. One of American Family's trial lawyers acknowledged the settlement demands and said that the evaluation of $17,500 was not too far away from their evaluation of the damages. However, he found the offers unacceptable because State Farm continually refused to offer anything toward settlement, and because he felt Heintz was no more negligent than Thomas, State Farm's insured. He said that American Family could not settle unless State Farm made a satisfactory contribution.

Gladys Heintz, American Family's insured, was fully advised of the preceding and all subsequent settlement negotiations.

On the first day of trial, the Johnsons offered to accept a $15,000 "pot" from American Family. American Family rejected this settlement demand because State Farm refused to contribute toward the settlement.

The jury (in the first trial) found Heintz 85 percent causally negligent and Thomas 15 percent causally negligent, and awarded $35,000 in damages. After trial, Elliott, on behalf of his client, Mrs. Johnson, offered to settle the case for $32,500.

Wickhem, American Family's trial counsel, recommended that an appeal be taken from the judgment. This recommendation was based upon the fact that at trial, Dr. Odland testified that Mrs. Johnson's re-injury of her knee in August, 1969, was not related to the 1964 accident. Wickhem reasoned that since there was a lack of evidence from which the jury could have concluded that Mrs. Johnson's condition resulting from the 1964 acci-

dent caused her to re-injure herself in August, 1969, the jury should not have been allowed to speculate that there was a connection between the two incidents. He believed the jury could not have arrived at the amount of damages it did without taking the re-injury into consideration.

The Johnsons then offered to settle for $30,000. Wickhem informed American Family of this offer, but advised that they should proceed with the appeal.

On May 3, 1972, William Donovan, State Farm's lawyer, wrote to counsel for American Family and stated that offers of settlement seemed to be predicated upon the theory that State Farm would contribute 15 percent of the total judgment as part of a settlement. He stated that State Farm had always maintained the position that it owed nothing and had no exposure to the plaintiffs, but only to the third-party plaintiff, American Family. His position was that if State Farm should offer any contribution, it would have to be based on some percentage of the amount actually paid to the plaintiffs by American Family. Counsel for the Johnsons reiterated his settlement offer to American Family and stated that Donovan's letter was of no consequence. He stated that his settlement offer amounted to an offer to settle the case for the entire amount of the judgment and then a reimbursement by the plaintiffs so that Heintz would not have to pay any part of the judgment in excess of the amount of insurance involved.

At this juncture, Gladys Heintz, American Family's insured, retained Thomas Basting to represent her interests. Elliott, as counsel for the Johnsons, informed Basting of his position. Counsel for American Family informed Basting that substantial basis for appeal existed since there was no evidence of a connection between the 1964 accident and the re-injury of August, 1969. It was the position of American Family that even if State Farm were willing to pay 15 percent as demanded by the plaintiffs, it would not be incumbent upon American

Family to pay its full policy limits in order to protect its insured as long as it was willing to prosecute the appeal and the likelihood of success was as great as counsel believed it to be.

Basting demanded that American Family offer to settle with the Johnsons for the full extent of the policy limits. In reply counsel for American Family stated that the plaintiffs had not indicated that they would be willing to give a full release to Mrs. Heintz upon payment of the policy limits, and informed Basting that American Family was proceeding with the appeal.

On September 7, 1972, in behalf of State Farm, Donovan wrote to counsel for American Family and stated that he believed a settlement in the $30,000 range would be well-advised. He proposed that State Farm contribute $4,000 to American Family on the condition that American Family pay to the plaintiffs the sum of $25,500 and that Mrs. Heintz pay to the plaintiffs an additional sum of $500. He stated that this figure would not be in excess of American Family's policy limits since American Family had already received $500 from Allstate.

On January 5, 1973, Basting informed counsel for American Family that the plaintiffs' counsel would be willing to settle the case if American Family paid to him their policy limits plus the $500 collected from Allstate, and plaintiffs' counsel would expect American Family to give up its right of contribution against State Farm and pay the 15 percent owed by State Farm to the plaintiffs, bringing the total settlement near $30,000. Basting demanded that American Family propose the offer to plaintiffs' counsel. Basting was then informed that American Family's counsel had asked Elliott, as plaintiffs' counsel, to reduce the settlement proposal to writing, and was again informed that American Family believed the appeal would be successful.

On January 8, 1973, Elliott wrote to American Family and offered to settle for $30,000. American Family

would pay 85 percent of $30,000, or $25,500, and State Farm would pay 15 percent of $30,000, or $4,500, and since American Family received $500 from Allstate, American Family would not be paying any more than its policy limits. Wickhem, as counsel for American Family, replied to this offer and stated that the judgment constituted a miscarriage of justice against American Family and Mrs. Heintz. He believed the appeal would result in affirmative relief, and a settlement in the amount Elliott suggested would not fairly adjudicate the interests of the parties. The settlement proposal was rejected.

On January 16, 1973, Basting requested that American Family offer to pay the total sum of $25,000 and give up its right of contribution against State Farm. Since State Farm was willing to contribute $4,500, this would bring the total settlement package to $29,500.

On January 24, 1973, Elliott demanded that Wickhem advise him at what amount he would settle the case. Wickhem replied and asked if the plaintiffs would consider an offer of less than $30,000 if it was presented. Elliott replied that he and his clients were willing to listen to any settlement offers that might be proposed. On February 6, 1973, American Family offered $15,000 plus any contribution rights American Family had against State Farm. Elliott informed American Family that the offer was totally unacceptable.

On March 19, 1973, Basting wrote counsel for American Family and renewed his demand that American Family offer to settle for the policy limits and was subsequently advised that American Family could not increase its offer.

In December, 1973, this court reversed the judgment of the trial court and remanded the cause for a new trial.

On May 28, 1974, State Farm offered $3,750 to American Family in exchange for the dismissal of State Farm from the upcoming trial. This offer was rejected. The second trial was then scheduled and at the pretrial, the

plaintiffs demanded $35,000 to settle their claims. They also reached a settlement with State Farm. State Farm paid $5,000 to the plaintiffs in exchange for a Pierringer-type release.

Counsel for American Family wrote to Basting and expressed his opinion that the decision of the Supreme Court greatly reduced the value of the plaintiffs' claim. He stated that since the plaintiffs' demand for settlement was equal to the amount the jury awarded when it was allowed to take into account the re-injury and there was no additional medical evidence at the present time, he could see no reason for settling at the amount demanded by the plaintiffs. Basting again demanded that American Family offer the policy limits in settlement. American Family replied that after the plaintiffs settled with State Farm, the plaintiffs' lawyer was contacted in an effort to settle within the applicable limits; the plaintiffs' lawyer wanted an additional $30,000 over and above the $5,000 paid by State Farm, and therefore American Family concluded the case could not be settled prior to trial within the policy limits.

As previously stated, the second trial resulted in a verdict which awarded $78,367 in damages to the plaintiffs. After the verdict was affirmed on appeal, American Family paid its policy limits and its insured, Gladys Heintz, assigned any cause of action she might have against American Family to the plaintiffs.

The plaintiffs then commenced the instant action against American Family. The jury returned a verdict finding that American Family did not exercise bad faith toward Gladys Heintz with respect to (a) failing to make a diligent effort to ascertain the facts upon which a good faith evaluation could be made of the claims of Emaline and Donald Johnson; (b) failing to notify Gladys Heintz that the recovery could exceed her policy limits; (c) failing to keep Mrs. Heintz timely and adequately informed of any and all offers of settlement re-

ceived from the Johnsons and of the progress of settlement negotiations; or (d) failing to settle the Johnsons' claims within the policy limits.

Judgment was entered on the verdict, this appeal follows, and the issues presented are:

1. Did American Family act in bad faith in failing to settle the Johnsons' claim within the policy limits?

2. Did the trial court err in excluding portions of the decision of a trial judge on motions after verdict in a prior trial?

3. Did the trial court err in failing to grant a new trial in the interest of justice?

Significant in our review of the issues in this case is the fact that judgment was entered on a jury verdict which had the approval of the trial judge.

The standard of appellate review of the sufficiency of the evidence to support a jury verdict has been stated as follows:

"The standard of review of a jury verdict is that it will not be upset if there is any credible evidence to support it. The evidence will be viewed in the light most favorable to the verdict. *May v. Skelley Oil Co.,* 83 Wis.2d 30, 35, 264 N.W.2d 574 (1978); *Nelson v. Travelers Ins. Co.,* 80 Wis.2d 272, 282, 283, 259 N.W.2d 48 (1977). This is especially true where, as here, the verdict has the approval of the trial court. *Upton v. Tatro,* 68 Wis.2d 562, 570, 229 N.W.2d 691 (1975). The credibility of witnesses and the weight given to their testimony are left to the judgment of the jury, and where more than one reasonable inference can be drawn from the evidence, this court must accept the inference drawn by the jury. *Roach v. Keane,* 73 Wis.2d 524, 536, 243 N.W.2d 508 (1976). On appeal the obligation of this court is to search for credible evidence that will sustain the verdict, not for evidence to sustain a verdict the jury could have but did not reach. *Coryell v. Conn.,* 88 Wis.2d 310, 317, 276 N.W.2d 723 (1979)." *Meurer v. ITT General Controls,* 90 Wis.2d 438, 450, 451, 280 N.W.2d 156 (1979).

The appellants contend that it was bad faith for American Family to refuse to settle the case before the first trial, to refuse to offer the policy limits after the first trial, and to refuse to offer the policy limits shortly before the second trial.

Bad faith on the part of an insurance company must be proved by clear and convincing evidence. *Alt v. American Family Mut. Ins. Co.*, 71 Wis.2d 340, 354, 237 N.W. 2d 706 (1976); *Baker v. Northwestern Nat. Casualty Co.*, 26 Wis.2d 306, 315, 132 N.W.2d 493 (1965); *Berk v. Milwaukee Automobile Ins. Co.*, 245 Wis. 597, 601, 15 N.W.2d 834 (1944).

The appellants place considerable reliance on *Alt v. American Family, supra. Alt* involved damages arising out of an accident in which a six-year-old child was struck by an automobile and severely injured. It was a summary judgment case in which the plaintiff alleged the insurer had failed to make a timely and diligent investigation, failed to discover the severity of the injuries sustained by the minor and probable liability on the part of the insured, and failed to keep the insured informed of the offers of settlement. The trial court recognized that a question of fact was presented, but nevertheless granted the motion of the insurer for summary judgment because there had been no legally binding offer of settlement submitted to the insurer. Therefore, we held the case reached "us in the posture requiring that only the legal question posed be decided." *Alt, supra,* at 343. We reversed, holding that a legally binding offer of settlement and refusal thereof by the insurer was not a condition precedent to maintaining a cause of action against an insurer founded upon bad faith. *Alt* does not categorically stand for the proposition that an insurer must seize every opportunity to settle a claim within the policy lim-

its. The case recognizes that when we speak of bad faith we are referring to a breach of a known fiduciary duty.

". . . This carries with it the duty to act on behalf of the insured and to exercise the same standard of care that the insurance company would exercise were it exercising ordinary diligence in respect to its own business. Since that is the accepted standard, an insurance company, in which is vested the exclusive control of the management of the case, breaches its duty when it has the opportunity to settle an excess liability case within policy limits and it fails to do so. . . .

". . . This duty is, of course, intimately related to its affirmative duty to investigate. A proper investigation should impel a response by the insurer and a determination of whether liability is clear and whether the exposure may jeopardize the insured by being in excess of the policy limits." *Id.* at 348, 349.

In *Baker v. Northwestern Nat. Casualty Co.,* 22 Wis. 2d 77, 81, 125 N.W.2d 370 (1963) and *Maroney v. Allstate Ins. Co.,* 12 Wis.2d 197, 200, 201, 107 N.W.2d 261 (1961), this court stated that it is not bad faith if counsel for an insurance company refuses to settle the claim of an injured person under the bona fide belief that the insurer might defeat the action or keep the verdict within policy limits. Even though the insurer may have acted negligently, exercising poor judgment, it is not enough to show that the insurer acted negligently in deciding to litigate rather than to settle the case.

The evidence in this case shows that there were offers by the Johnsons to settle their claims in the amounts of $20,000, then $17,500 and later $15,000 plus 50 percent of the contributions from other defendants up to an additional $2,500. These offers were made prior to the first trial, and on the first day of the trial the Johnsons offered to accept $15,000 in full settlement. Counsel for American Family evaluated the case and concluded that it had a fair settlement value of $15,000, but American Family rejected the settlement demand of $15,000.

However, there were several factors which counsel for American Family believed would either reduce or eliminate the negligence of its insured, or reduce the amount of damages. The accidents occurred in a blizzard and it was possible, counsel believed, that the jury would find no negligence on the part of Mrs. Heintz because of the weather conditions and because an emergency situation existed when the Bruhn car suddenly appeared before her in her lane. It was questionable whether a jury would believe Mrs. Johnson's testimony as to her injuries because all defense counsel agreed that she was not a very credible witness. Another factor was the degree of negligence that a jury might attribute to State Farm's insured; counsel for American Family believed that Mrs. Heintz was no more negligent than State Farm's insured. Also, some of Mrs. Johnson's injuries occurred as a result of a fall in August of 1969, but in his deposition taken shortly before trial in December of 1971, Mrs. Johnson's attending physician was unable to state that those injuries were caused by the 1964 accidents. For these reasons, counsel for American Family believed that the negligence of Mrs. Heintz would be limited and that it was not probable that a judgment in excess of the policy limits would be assessed against Mrs. Heintz. Also, State Farm had refused to participate in the settlement. Thus, under the circumstances, it cannot be said that American Family's decision to proceed to trial and not to settle constituted bad faith. The jury verdict in the case at bar is supported by credible evidence.

The appellants also contend that it was bad faith for American Family to refuse to offer the policy limits in settlement after the jury returned a verdict in the amount of $35,000. After this verdict, the Johnsons offered to settle for $25,000 or $25,500, plus the contribution available from State Farm, with no payment from Mrs. Heintz. American Family never tendered its policy

limits, but made an offer of $15,000 together with any contribution rights against State Farm.

The evidence shows that American Family did not act in bad faith in refusing to offer the policy limits of $25,000. At trial, Mrs. Johnson's physician testified that the re-injury of Mrs. Johnson's knee in August, 1969, was not related to the 1964 accident. Counsel for American Family reasoned that since there was a lack of evidence from which a jury could have concluded that Mrs. Johnson's condition resulting from the 1964 accident caused her to re-injure herself in 1969, the jury should not have been allowed to speculate that there was a connection between the two incidents. Counsel believed that the high verdict was attributable to the fact that the jury had been allowed to consider evidence of the re-injury improperly and believed that the jury verdict would be reversed on appeal. Counsel for American Family still believed the settlement value was $15,000 and there was no new medical evidence to indicate that their appraisal was incorrect. Therefore, it was not bad faith on the part of American Family to refuse to offer the policy limits after the first trial.

After the appeal to the Supreme Court and reversal of the judgment, and before the second trial, no further evidence was developed to attribute the 1969 injury to the 1964 accidents. The Johnsons offered to settle for $35,000, but this would have required payment by Mrs. Heintz of at least $5,000, and counsel for American Family continued to believe that $15,000 was an accurate assessment of the award that could be expected at trial. Thus, American Family again did not act in bad faith.

The appellants next contend that the trial judge erred in excluding portions of the decision of a trial judge on motions after verdict in a prior trial. The appellants attempted to offer portions of this decision as substantive

evidence of damages. The decision of the prior trial judge set forth his observations on the adequacy of the evidence to sustain the damages set forth in the jury verdict. In the instant trial, the trial judge sustained the objections to the admission of this decision as substantive evidence of damages. The trial judge held that for the purposes offered, the decision of the prior trial judge was hearsay, and we believe the holding was correct.

The appellants contend that the comments of the trial judge were admissible under sec. 908.03(6), Stats., the "business records" exception to the hearsay rule. Clearly, the judge's comments do not come within this exception since they were not a result of a regularly conducted activity.

The appellants also contend that the comments were admissible under sec. 908.03(8), Stats. Although the judge's decision may have been admissible as a record in a civil case, it would be admissible as just that—a judge's decision—and could not be used as substantive evidence of damages.

Finally, the appellants contend that the comments should be admissible under sec. 908.03(24), Stats., which provides an exception for a "statement not specifically covered by any of the foregoing exceptions but having comparable circumstantial guarantees of trustworthiness." At the time the trial judge made the remarks he was selecting only that evidence in the record which would support the jury's verdict and was not discussing the evidence in general. Thus, his comments would be prejudicial and do not meet the standard of trustworthiness required by sec. 908.03(24).

The appellants finally contend that the trial court erred in denying their motion for a new trial in the interest of justice. The trial court's ruling on a motion for a new trial is highly discretionary and will not be reversed on appeal in the absence of a showing of an abuse of discre-

tion. *Stanhope v. Brown County,* 90 Wis.2d 823, 855, 280 N.W.2d 711 (1979) ; *Priske v. General Motors Corp.,* 89 Wis.2d 642, 663, 279 N.W.2d 227 (1979) ; *De Groff v. Schmude,* 71 Wis.2d 554, 563, 238 N.W.2d 730 (1976). We find nothing in the record to indicate that the trial court abused its discretion.

*By the Court.*—Judgment affirmed.