**STA–RITE INDUSTRIES, INC.,**
Plaintiff–Appellant,

v.

**ZURICH RE (U.K.) LTD.,**
Defendant–Appellee.

No. 98–4259.

United States Court of Appeals,
Seventh Circuit.

Argued April 21, 1999.

Decided May 17, 1999.

Michael R. Wherry (argued), Davis & Kuelthau, Milwaukee, WI, for Plaintiff–Appellant.

J. Ric Gass, Kravit, Gass, Hovel & Leitner, Milwaukee, WI, James P. Davenport, Baach Robinson & Lewis, Washington, DC, for Defendant–Appellee.

Before BAUER, FLAUM and MANION, Circuit Judges.

FLAUM, Circuit Judge.

In this diversity case governed by Wisconsin law, the question is whether an insurer owes an insured a duty of good faith by virtue of the insurer's non-exclusive right to associate in the settlement and defense of a claim. The district court concluded that an insurer owes no such duty under Wisconsin law and granted summary judgment. We affirm.

**Background**

In June 1993 five year-old Valerie Lakey was playing in a wading pool in North Carolina when she was trapped by suction

from water being pumped through the drain in the bottom of the pool. The drain cover, manufactured by Sta–Rite Industries, Inc. ("Sta–Rite"), was not properly screwed in place. Before the pump was turned off, Valerie's intestines were almost completely destroyed, leaving her alive, but dependent on tube feedings.

The Lakeys filed suit in state court in Raleigh, North Carolina against Sta–Rite and three other defendants: the community pool association, the county government responsible for the pool, and the pump manufacturer. The claim against Sta–Rite was based on theories of defective design and failure to warn. The Lakeys settled with the community pool association for $500,000, with the county for $2.5 million, and with the pump manufacturer for $2.9 million. Only Sta–Rite chose to go to trial.

Sta–Rite was covered by two insurance policies. The primary policy was a comprehensive general liability policy issued by National Fire Insurance Co. ("AIG") with a limit of $2 million. Under this policy, AIG had a duty to defend any claim within its policy coverage. In addition to the AIG policy, Sta–Rite had a $500,000 self-insured retention and an excess policy issued by Zurich Re (U.K.) Ltd. ("Zurich") with a limit of $20 million.

Sta–Rite selected an attorney to represent it in pretrial matters and at trial. Zurich hired its own attorney, Mark Kreger, who participated in pretrial discussions with Sta–Rite regarding settlement strategy and who, along with two other Zurich attorneys, monitored developments at the trial in North Carolina. Immediately prior to trial, plaintiffs made a settlement demand of $4.1 million. AIG, however, refused to tender its policy limit of $2 million, and Zurich offered to contribute only $500,000. No settlement was reached.

The trial went badly for Sta–Rite. On December 16, 1996, several weeks into the trial, the trial court granted the Lakeys' motion to amend their complaint to include a claim for punitive damages. In late December, after the plaintiffs' case in chief was completed, settlement discussions resumed. At this point, Zurich, through Kreger, took the lead role in attempting to negotiate a settlement with the Lakeys.

On December 20, 1996, Zurich offered to settle the case for $8.5 million. On December 30, plaintiffs rejected the $8.5 million settlement offer and made a "non-negotiable" settlement demand of $22.5 million, a sum equal to Sta–Rite's self-insured retention and AIG's and Zurich's combined policy limits, plus an additional $1 million from Sta–Rite. Sta–Rite asked Zurich to contribute the full $20 million and to settle the case.

Zurich made a counteroffer to the Lakeys of $17.5 million, of which $15 million would be contributed by Zurich. Before communicating this offer, Zurich reminded Sta–Rite that it was obligated to indemnify Sta–Rite after Sta–Rite paid a covered claim and that Sta–Rite could settle at a sum it deemed appropriate and later seek reimbursement from Zurich. Zurich then communicated its offer to the Lakeys. The Lakeys rejected the offer.

On January 13, 1997, after six weeks of trial, the jury rendered a compensatory damage verdict in favor of plaintiffs in the amount of $25 million. Before commencement of the punitive damages portion of the trial, the parties settled the case. Sta–Rite agreed not to appeal the compensatory damage award, and the Lakeys agreed to forgo their claim for punitive damages. AIG paid $2 million, its policy limit. Zurich paid $20 million, its policy limit. Sta–Rite paid its self-insured retention of $500,000 plus $2.5 million to cover the difference between its total insurance coverage of $22.5 million and the jury verdict of $25 million.

Sta–Rite then brought suit in federal court against Zurich, claiming that Zurich owed a fiduciary duty of good faith to Sta–Rite which Zurich breached by refusing to pay its policy limits of $20 million in response to the December 30 offer. Sta–

Rite claimed damages of $2.5 million, the difference in its liability for the December 30 offer and the post-judgment settlement. The district court concluded that under Wisconsin law Zurich did not owe a duty of good faith to Sta–Rite and granted summary judgment to Zurich.

## Discussion

We review de novo the award of summary judgment, construing the evidence in the light most favorable to the non-moving party. *See Drake v. Minnesota Mining & Mfg. Co.*, 134 F.3d 878, 883 (7th Cir.1998). Summary judgment is appropriate "if there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c); *Salima v. Scherwood South, Inc.*, 38 F.3d 929, 932 (7th Cir. 1994). As a court sitting in diversity, we apply the law of Wisconsin and attempt to predict how the Wisconsin Supreme Court would decide the issues presented here. *Lexington v. Rugg & Knopp, Inc.*, 165 F.3d 1087, 1090 (7th Cir.1999).

A traditional liability insurance policy confers the right to settle and defend any claims on the insurer and prevents the insured from participating in the defense of a claim. A traditional indemnity policy, by contrast, leaves the duty to settle and defend on the insured, requiring the insurer to indemnify the insured for claims paid within the policy's coverage. *See General Casualty Co. of Wisconsin v. Hills*, 209 Wis.2d 167, 561 N.W.2d 718, 722 n. 11 (1997). Sta–Rite's insurance contract with Zurich was a hybrid, allowing Zurich, the insurer, to associate with the defense and settlement of claims within the policy coverage, without excluding Sta–Rite from participating in the defense of claims.

■ An insurer with a defined policy limit usually evaluates risk differently than an insured which will bear the costs of any settlement or judgment exceeding policy limits. Such an insurer evaluates settlement offers below its policy limits with its ceiling of risk defined by the policy limit in mind. To the insured, an offer to settle below policy limits is equivalent to an offer to settle at policy limits since the insurer will bear the total costs of the settlement assuming the claim is covered by the policy. Where an insurance contract places the duty to defend and settle on the insurer to the exclusion of the insured, a duty of good faith assures that the insurer will take the insured's interests in due consideration when defending and settling the claim. *See Certain · Underwriters of Lloyd's v. General Accident Insurance Co. of America*, 909 F.2d 228, 231–32 (7th Cir. 1990). Where, as in this case, the insurance contract does not exclude the insured from participating in the defense and settlement of the claim, the rationale underlying the duty of good faith loses its force.

Though we have not identified any Wisconsin cases which deal specifically with the hybrid insurance contract at issue in this case, Wisconsin case law has been uniform in identifying the exclusion of the insured from participating in the settlement and defense of a claim as the reason for implying a duty of good faith on the part of the insurer. We therefore conclude that Wisconsin courts would find that an insurer does not owe an insured a duty of good faith by virtue of the insurer's non-exclusive right to associate in the settlement and defense of a claim.

The seminal Wisconsin case concerning the insurer's duty of good faith is *Hilker v. Western Auto. Ins. Co.*, 204 Wis. 1, 235 N.W. 413 (1931). In *Hilker*, the terms of the insurance policy provided the insurer with the exclusive right to settle and defend claims. The Wisconsin Supreme Court found implicit in such an arrangement the insurer's duty to settle and defend claims in good faith. The *Hilker* Court wrote:

It is the right of the insurer to exercise its own judgment upon the question of whether the claim should be settled or contested. But because it has taken over this duty, and because the contract

prohibits the insured from settling, or negotiating for a settlement, or interfering in any manner except upon the request of the insurer, such as assisting in the securing of witnesses, etc., its exercise of this right should be accompanied by considerations of good faith.

*Hilker,* 235 N.W. at 414.

Wisconsin cases following *Hilker* all ground the insurer's duty of good faith in the insurer's exclusive duty to settle and defend a case. *See Mowry v. Badger State Mutual Casualty Co.,* 129 Wis.2d 496, 385 N.W.2d 171, 178 (1986); *Johnson v. American Family Mutual Ins. Co.,* 93 Wis.2d 633, 287 N.W.2d 729, 734 (1980); *Alt v. American Family Mutual Ins. Co.,* 71 Wis.2d 340, 237 N.W.2d 706, 711 (1976); *Berk v. Milwaukee Automobile Ins. Co.,* 245 Wis. 597, 15 N.W.2d 834, 836 (1944). In *Moutsopoulos v. American Mutual Ins. Co. of Boston,* 607 F.2d 1185, 1188–89 (7th Cir.1979), this Court recognized that in Wisconsin, the duty of good faith "arises from the provisions in an insurance contract which give the insurer absolute control over the defense and settlement of all claims against the insured." The most recent Wisconsin case on the insurer's duty of good faith does nothing to modify this long-held view. *See Prosser v. Leuck,* 225 Wis.2d 126, 592 N.W.2d 178, 182 (1999). The district court correctly concluded that Zurich's right to associate in the defense and settlement of the claim did not create a duty under Wisconsin law for Zurich to act in good faith towards Sta–Rite.

Sta–Rite argues that if Zurich's contractual right to associate in the defense and settlement of the claim did not create a duty of good faith, Zurich's conduct in the settlement negotiations did. Sta–Rite argues that Zurich usurped StaRite's role in the settlement process and in so doing assumed a duty of good faith towards Zurich. In the district court, Sta–Rite framed its argument in terms of waiver, estoppel, and agency principles. On appeal, Sta–Rite relies solely on agency principles, arguing that when Zurich's attorney took control of the settlement negotiations, Zurich was effectively acting as Sta–Rite's agent in the negotiations. In acting as its agent, Sta–Rite argues, Zurich assumed a duty of good faith breached by its failure to tender the full $20 million policy limit in response to the $22.5 million settlement offer.

■ Wisconsin does recognize the general rule that an agent owes a fiduciary duty of good faith to its principal. *See Bank of California v. Hoffmann,* 255 Wis. 165, 38 N.W.2d 506, 509 (1949). The presence of an actual agency relationship, however, depends on the agreement of the parties. *See Skrupky v. Elbert,* 189 Wis.2d 31, 526 N.W.2d 264, 269 (1994). Sta–Rite's agency claim fails because it can point to no evidence which might indicate that it and Zurich agreed for Zurich to be StaRite's agent. To the contrary, Zurich made clear that it was not acting as Sta–Rite's agent in its letter to Sta–Rite responding to plaintiffs' $22.5 million settlement demand. In that letter, Zurich advised Sta–Rite that under the insurance policy Sta–Rite had the right to settle any claims as it saw fit and then seek indemnification from Zurich. Sta–Rite presents no evidence to suggest that this letter was insufficient to dispel it of the notion that Zurich was acting as its agent in the settlement negotiations. The district court correctly concluded that Zurich did not owe Sta–Rite a duty of good faith in conducting these negotiations.

### Conclusion

For these reasons, the district court's grant of summary judgment is AFFIRMED.